977 F.2d 527
 60 Fair Empl.Prac.Cas. (BNA) 456,
60 Empl. Prac. Dec. P 41,845, 24 Fed.R.Serv.3d 335
 Ben JONES, Plaintiff,
John Issac; Harvey Echols; Jim Thornton; Sherman Jones;
Henry Washington, Plaintiffs-Intervenors, Appellants,
v.
FIRESTONE TIRE AND RUBBER COMPANY, INC., Defendant-Appellee.
Ben JONES, Plaintiff-Appellant,
John Issac; Harvey Echols; Jim Thornton; Sherman Jones;
Henry Washington, Plaintiffs-Intervenors,
v.
FIRESTONE TIRE AND RUBBER COMPANY, INC., Defendant-Appellee.
 Nos. 90-7499, 90-7755.
 United States Court of Appeals,
Eleventh Circuit.
 Oct. 27, 1992.
Rehearing and Rehearing En Banc
Denied Dec. 29, 1992.
 
 Robert L. Wiggins, Jr., Anna K. Norton, Gordon, Silberman, Wiggins & Childs, P.C., Birmingham, Ala., for Ben Jones.
 C. Daniel Karnes, Katie J. Colopy, Ross W. Townsend, Jones, Day, Reavis & Pogue, Chicago, Ill., Glen D. Nager, Jones, Day, Reavis & Pogue, Washington, D.C., for Firestone in No. 90-7499.
 Glen D. Nager, Jones, Day, Reavis & Pogue, Washington, D.C., for Firestone in No. 90-7755.
 Appeal from the United States District Court for the Northern District of Alabama.
 Before TJOFLAT, Chief Judge, BIRCH, Circuit Judge, and HILL, Senior Circuit Judge.
 TJOFLAT, Chief Judge:
 
 
 1
 This case consolidates the appeals of Ben Jones (Jones) (No. 90-7755) and John Issac, Harvey Echols, Jim Thorton, Sherman Jones, and Henry Washington (Intervenors) (No. 90-7499) from discovery, class certification, and summary judgment orders, and from trial verdicts in favor of defendant Firestone Tire & Rubber Co. (Firestone). This case is among the diminishing number of employment discrimination cases that must be decided under the rulings of the Supreme Court prior to the Civil Rights Act of 1991.
 
 
 2
 We affirm in part, reverse in part, and remand for further proceedings.
 
 I.
 
 3
 Firestone is organized into various regions across the country. The Southeast Region encompasses eight states and is subdivided into five "zones": the Metro Market Zone, the Non-Metro Market Zone, and the three Major Metro Market Zones of Atlanta, Miami, and Tampa-Orlando. The Metro Market and Non-Metro Market Zones are further subdivided into five and eight markets respectively. Each of these markets comprises a group of stores in a particular geographical region. Each store employs a store manager, one or more assistant store managers, service managers, and retail salespersons ("pivotal employees"); and several technicians, installers, and general service persons ("non-pivotal employees").
 
 
 4
 The Southeast Region is headed by a Regional Director. Each Zone is headed by a Zone Manager. Each Market is headed by a Store Supervisor (in the Major Metro Market Zones) or a Market Manager (in the Metro and Non-Metro Market Zones). The Store Supervisors and Market Managers are assisted by Sales Administrators in each market.
 
 
 5
 Ben Jones was employed by Firestone from 1968 to 1986. In 1971, he became the first black Store Manager employed by Firestone in the Birmingham Market in the Metro Market Zone. He served in this position until 1983, when he was demoted to Assistant Store Manager. He was promoted to the position of Store Manager at Firestone's downtown Birmingham store in June 1984.
 
 
 6
 Chip Franklin became Market Manager of the Birmingham Market, and thus Jones' direct supervisor, in March 1985. In February 1986, Franklin instituted a policy that Store Managers were to remain in their stores during all business hours unless they had received Franklin's permission to leave. On Friday, August 15, 1986, Jones left his store for a dental appointment without Franklin's permission. He was also absent from the store on Saturday. The parties presented conflicting evidence about the measures which Jones took to notify Franklin of his dental appointment and continued absence.
 
 
 7
 On Monday, August 18, 1986, Franklin called Jones to his office to reprimand him for this incident. Franklin removed Jones from his position as Store Manager and offered him a choice between termination and a position as an Assistant Manager. On Tuesday, August 19, 1986, Franklin informed Jones that he had been unsuccessful in finding a Store Manager who wanted Jones as an assistant. Franklin offered him a position as a "floating" Assistant Manager. Jones accepted termination on August 20, 1986, rather than acquiesce to the demotion.
 
 
 8
 On October 12, 1986, Jones filed an EEOC charge in which he asserted (i) that his threatened demotion was based on his race and was in retaliation for an earlier EEOC charge he had filed, (ii) that Firestone had a practice of assigning managers to stores based on "the racial composition of a particular store's clientele," and (iii) that Firestone discriminated on the basis of race with regard to "job assignments, promotions, discipline, discharges, and other terms and conditions of employment." Jones asked the EEOC for a right-to-sue letter and received one in August 1987.
 
 
 9
 On February 1, 1988, Jones filed a complaint under 42 U.S.C. §§ 2000e to 2000e-17 (1988) (Title VII), and 42 U.S.C. § 1981 (1988), based on these charges. He sued individually and on behalf of a class of "black persons who applied for employment, have been employed, or who may in the future be employed and who [suffered discrimination] because of their race in discipline, discharge, job assignments, promotions, demotion, and other terms and conditions of employment." He sought (i) a declaratory judgment that Firestone's employment procedures were in violation of Title VII, (ii) a permanent injunction against continuing violations, and (iii) reinstatement, back pay, damages, lost seniority, and lost pension and fringe benefit credits.[1]
 
 
 10
 Five members of the proposed class--John Issac, Harvey Echols, Jim Thorton, Sherman Jones, and Henry Washington--were later permitted to intervene to assert claims on behalf of themselves and the class. None of the Intervenors had filed EEOC charges.
 
 
 11
 On November 28, 1989, the district court denied class certification for the putative class alleging racial discrimination in promotions.[2] In June 1990, the district court granted summary judgment for Firestone with regard to all claims of the Intervenors and, pursuant to Fed.R.Civ.P. 54(b), entered final judgments against them. The Intervenors appeal in No. 90-7499.
 
 
 12
 The district court also granted summary judgment for Firestone with regard to the claims of Jones "concerning discriminatory failure to promote, discrimination in job assignment, and constructive discharge." The court declined to enter final judgment on these claims pursuant to Rule 54(b). Jones proceeded to trial on his remaining claims: demotion and retaliation. On September 24, 1990, the judge conducted a bench trial and ruled in favor of Firestone on both claims. Jones appeals in No. 90-7755.
 
 
 13
 Three groups of issues are before this court. Part II discusses the issues involved in the district court's decision not to certify a class. Part III examines the summary judgments granted to the defendant. Part IV addresses the trial verdicts rendered. We affirm the denial of class certification and the trial verdicts. We reverse the summary judgments as to the promotion claims of Jones and the Intervenors, but affirm all other summary judgments. We remand for further proceedings concerning the promotion claims.
 
 II.
 
 14
 A district court's denial of class certification will not be disturbed absent an abuse of discretion. See Washington v. Brown & Williamson Tobacco Corp., 959 F.2d 1566, 1569 (11th Cir.1992); Coon v. Georgia Pac. Corp., 829 F.2d 1563, 1566 (11th Cir.1987); Gilchrist v. Bolger, 733 F.2d 1551, 1555 (11th Cir.1984).
 
 
 15
 A plaintiff who seeks to represent a class must meet the requirements of both Fed.R.Civ.P. 23 and the underlying substantive law. At the time of the class certification hearing, Jones sought to represent a class of black Firestone employees who had suffered racial discrimination with respect to promotions. As we have noted before,
 
 
 16
 any analysis of class certification must begin with the issue of standing and the procedural requirements of Title VII. Thus, the threshold question is whether the named plaintiffs have individual standing, in the constitutional sense, to raise certain issues. Only after the court determines the issues for which the named plaintiffs have standing should it address the question whether the named plaintiffs have representative capacity, as defined by Rule 23(a), to assert the rights of others.
 
 
 17
 Griffin v. Dugger, 823 F.2d 1476, 1482 (11th Cir.1987) (citations omitted), cert. denied, 486 U.S. 1005, 108 S.Ct. 1729, 100 L.Ed.2d 193 (1988); see also Brown v. Sibley, 650 F.2d 760, 771 (5th Cir. Unit A July 1981) ("This constitutional threshold must be met before any consideration of the typicality of claims or commonality of issues required for procedural reasons by Fed.R.Civ.P. 23.").[3] Here Jones seeks to represent a class based on his Title VII and section 1981 claims. He may do so only to the extent that he has standing to bring individual claims.
 
 A.
 
 18
 One who seeks to represent a class in a private Title VII suit must have standing to raise the claims of the class and must satisfy the procedural requirements of Title VII. Griffin, 823 F.2d at 1482. Title VII requires a plaintiff to file a charge with the EEOC within 180 days of the alleged unfair labor practice.[4] Pursuant to the "single-filing rule," "[a]s long as at least one named plaintiff timely filed an EEOC charge, the precondition to a Title VII action is met for all other named plaintiffs and class members." Id. This rule encompasses two essential requirements: "First, at least one plaintiff must have timely filed an EEOC complaint that is not otherwise defective.... Second, the individual claims of the filing and non-filing plaintiffs must have arisen out of similar discriminatory treatment in the same time frame." Jackson v. Seaboard Coast Line R.R., 678 F.2d 992, 1011-12 (11th Cir.1982); see also Griffin, 823 F.2d at 1492-93.
 
 
 19
 Only Ben Jones filed an EEOC complaint. Therefore, the first issue is the effective scope of his EEOC charge. The class may pursue only those claims arising "out of similar discriminatory treatment in the same time frame." Jones filed his EEOC charge on October 12, 1986. The charge alleged that Firestone discriminated on the basis of race with regard to "job assignments, promotions, discipline, discharges, and other terms and conditions of employment."
 
 
 20
 The district court determined that Jones' charge provided a basis for claims arising between April 15, 1986 (180 days before the charge was filed) and August 20, 1986 (the date Jones left Firestone). The court found that Jones only had standing to complain about "his demotion" and "his failure to be selected by [the Market Manager] for a transfer to any of the several Store Manager positions that were filled during the period and which may have provided an opportunity for increased earnings, albeit at the same level." No. CV 88-P-0170-S, slip op. at 5-6 (N.D.Ala. Nov. 28, 1989). The court found "no vacancies or promotions in the higher positions of Market Manager or Sales Administrator." Id. at 6.[5]
 
 
 21
 Based on these findings, the district court concluded:
 
 
 22
 Jones' charge may be used as the foundation for claims by other pivotal employees in the Birmingham market that because of their race they were denied promotions to, or were demoted or discharged from, pivotal positions in this market. In other respects, the claims sought to be presented--whether on behalf of intervenors or class members--are beyond the scope of Jones' EEOC charge.
 
 
 23
 Id. at 8.[6] The court excluded three groups based on Jones' EEOC charge: (i) those seeking jobs above Store Manager (because there were no such jobs in the Metro Market during the period), (ii) non-pivotal employees (because Jones was a pivotal employee), and (iii) those seeking jobs outside the Birmingham Market (because Jones was not discriminated against with respect to these jobs). This left only the claims of pivotal employees in Birmingham who, like Jones, claimed to have suffered racial discrimination in their employment.
 
 
 24
 Jones argues that the district court drew the class too narrowly by excluding evidence of jobs outside the Birmingham Market. He claims that the evidence before the district court showed that there was a vacancy in the position of Sales Administrator in the Non-Metro Market Zone which was filled by Terry Dahlem in early August of 1986. Firestone does not dispute the fact of this vacancy, but argues that Jones neither sought promotion to this position nor was eligible for a transfer to a market-level position in another Zone.
 
 
 25
 Jones does not argue that he applied for the Dahlem vacancy. Under the law of this circuit, he need not make such a showing. Firestone uses an informal promotion system in which it does not post openings or take applications for positions. In Carmichael v. Birmingham Saw Works, we held that
 
 
 26
 when there is no formal notice of the job's availability, the plaintiff may have no means, within his own knowledge, of showing whether the employer considered him or not. Furthermore, when an employer uses such informal methods it has a duty to consider all those who might reasonably be interested, as well as those who have learned of the job opening and expressed an interest.
 
 
 27
 Accordingly, a plaintiff makes out a prima facie case--that is, he creates a presumption of discrimination and forces the employer to articulate legitimate reasons for his rejection--as long as he establishes that the company had some reason or duty to consider him for the post. The employer cannot avoid a Title VII violation by showing that it incorrectly assumed that the plaintiff was uninterested in the job. When the plaintiff had no notice of or opportunity to apply for the job, such a reason for rejection is "legally insufficient and illegitimate."
 
 
 28
 738 F.2d 1126, 1133-34 (11th Cir.1984) (quoting Harris v. Birmingham Bd. of Educ., 712 F.2d 1377, 1383 (11th Cir.1983)); see also Cox v. American Cast Iron Pipe Co., 784 F.2d 1546, 1560 (11th Cir.), cert. denied, 479 U.S. 883, 107 S.Ct. 274, 93 L.Ed.2d 250 (1986).
 
 
 29
 Although Jones need not show that he applied for the Dahlem post, he must show that he was qualified for the position in order to make out a prima facie case of discrimination. See Watson v. Fort Worth Bank & Trust, 487 U.S. 977, 986, 108 S.Ct. 2777, 2784, 101 L.Ed.2d 827 (1988) ("[A] prima facie case [of discriminatory treatment contrary to Title VII] is ordinarily established by proof that the employer, after having rejected the plaintiff's application for a job or promotion, continued to seek applicants with qualifications similar to the plaintiff's." (emphasis added)) (citing Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253-54 & n. 6, 101 S.Ct. 1089, 1094 & n. 6, 67 L.Ed.2d 207 (1981)). Jones cannot meet this requirement, because the evidence at class certification tended to show that Firestone did not make inter-Zone transfers. In effect, one of the qualifications for Sales Administrator may have been experience within the Zone. For a similar reason, the district court concluded that Jones was not discriminated against with respect to pivotal jobs outside the Birmingham Market:
 
 
 30
 According to plaintiffs, Jones' charge should serve as a basis for challenging pivotal promotions outside the Birmingham market but within the Southeast Region. This contention suffers from the same flaw that affects their effort to attack promotions to Market Manager or Store Administrator--namely, that Jones did not suffer such discrimination.
 
 
 31
 No. CV 88-P-0170-S, slip op. at 6 (N.D.Ala. Nov. 28, 1989) (emphasis added). At the class certification stage, then, the court did not abuse its discretion by finding that Jones had not shown that he was discriminated against with respect to any jobs outside the Birmingham Market.
 
 
 32
 We conclude that the district court properly assessed the effective scope of Jones' EEOC charge. First, Jones did not have a Title VII claim with regard to market-level jobs because no market-level jobs were available in the Metro-Market Zone. Second, Jones did not have a Title VII claim for promotions outside the Birmingham Market because Firestone had a policy against such transfers. Finally, Jones had no claim that he had not been promoted to a non-pivotal position. Based on his EEOC charge, Jones only had standing to pursue claims regarding promotions, transfers, and demotions relating to Store Manager positions within the Birmingham Market.
 
 
 33
 Having limited the scope of Jones' EEOC charge, the district court did not abuse its discretion in declining to certify a class. "[A] Title VII class action, like any other class action, may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." General Tel. Co. v. Falcon, 457 U.S. 147, 161, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982); see also Griffin, 823 F.2d at 1482; Walker v. Jim Dandy Co., 747 F.2d 1360, 1363 (11th Cir.1984).
 
 
 34
 Rule 23(a) lists four prerequisites for a class action: numerosity, commonality, typicality and adequate representation.[7] Because the district court found the class as defined to consist of Jones, the Intervenors, one putative intervenor, and "only seven other blacks who have been employed as pivotal employees in the Birmingham market and hence might be members of the class," No. CV 88-P-0170-S, slip op. at 8 (N.D.Ala. Nov. 28, 1989), it properly found that the putative class failed to meet the Rule 23 numerosity requirement. See Cox, 784 F.2d at 1553 (noting that less than twenty-one is generally inadequate to meet the numerosity requirement). The district court did not abuse its discretion in refusing to certify a Title VII class.
 
 B.
 
 35
 Jones also asserted his promotion claims under section 1981. While this case was pending in the district court, the Supreme Court suggested that typical promotion claims would not be cognizable under section 1981: "[Section 1981] covers only conduct at the initial formation of the contract and conduct which impairs the right to enforce contract obligations through legal process." Patterson v. McLean Credit Union, 491 U.S. 164, 179, 109 S.Ct. 2363, 2374, 105 L.Ed.2d 132 (1989). Although this holding has been overruled by the Civil Rights Act of 1991,[8] appellants do not argue that this case should be decided under a retroactive application of that statute.[9] They instead claim that Patterson, properly interpreted, does not exclude promotion claims of the sort Jones makes.
 
 
 36
 The Patterson Court considered the racial harassment, promotion, and discharge claims of a black teller and file coordinator in a North Carolina credit union. The plaintiff asserted her claim under section 1981. The Court found that the plaintiff's harassment claims were not cognizable under section 1981:
 
 
 37
 By its plain terms, the relevant provision in § 1981 protects two rights: "the same right ... to make ... contracts" and "the same right ... to ... enforce contracts." The first of these protections extends only to the formation of a contract, but not to problems that may arise later from the conditions of continuing employment. The statute prohibits, when based on race, the refusal to enter into a contract with someone, as well as the offer to make a contract only on discriminatory terms. But the right to make contracts does not extend, as a matter of either logic or semantics, to conduct by the employer after the contract relation has been established, including breach of the terms of the contract or imposition of discriminatory working conditions. Such postformation conduct does not involve the right to make a contract, but rather implicates the performance of established contract obligations and the conditions of continuing employment, matters more naturally governed by state contract law and Title VII.
 
 
 38
 491 U.S. at 176-77, 109 S.Ct. at 2372-73. The Court went on to suggest that most promotion claims would not be cognizable under section 1981:
 
 
 39
 the question whether a promotion claim is actionable under § 1981 depends upon whether the nature of the change in position was such that it involved the opportunity to enter into a new contract with the employer. If so, then the employer's refusal to enter the new contract is actionable under § 1981. In making this determination, a lower court should give a fair and natural reading to the statutory phrase "the same right ... to make ... contracts," and should not strain in an undue manner the language of § 1981. Only where the promotion rises to the level of an opportunity for a new and distinct relation between the employee and the employer is such a claim actionable under § 1981. Cf. Hishon v. King & Spaulding, 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984) (refusal of law firm to accept associate into partnership) (Title VII).
 
 
 40
 Id. at 185-86, 109 S.Ct. at 2377; see also Wall v. Trust Co. of Ga., 946 F.2d 805, 808-09 (11th Cir.1991) (adopting Patterson test); Weaver v. Casa Gallardo, Inc., 922 F.2d 1515, 1519-20 (11th Cir.1991) (remanding promotion claims for reconsideration in light of Patterson ).
 
 
 41
 Under the test suggested by the Supreme Court in Patterson, then, the district court could have found that the promotions which Jones was denied did not rise "to the level of an opportunity for a new and distinct relation between the employee and the employer." The court concluded that Jones did not have a cognizable claim under section 1981 as interpreted by Patterson and was not able to serve as a class representative for the putative section 1981 class. This was not an abuse of discretion, and so we affirm the district court's refusal to certify a section 1981 class.
 
 III.
 
 42
 A district court should grant summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The trial judge is not to weigh the evidence at summary judgment to determine the truth of the matter but to determine whether there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2510-11, 91 L.Ed.2d 202 (1986). Further, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255, 106 S.Ct. at 2513 (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59, 90 S.Ct. 1598, 1608-09, 26 L.Ed.2d 142 (1970)). "Summary judgment should only be entered when the moving party has sustained its burden of showing the absence of a genuine issue as to any material fact when all evidence is viewed in the light most favorable to the non-moving party." Morrison v. Washington County, Ala., 700 F.2d 678, 682 (11th Cir.) (citing Adickes, 398 U.S. at 157, 90 S.Ct. at 1608), cert. denied, 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983).
 
 
 43
 Our review of a district court's grant of summary judgment is de novo. See Morrison, 700 F.2d at 682. "When we examine a decision granting or denying summary judgment, we apply the same legal standards that control the district court's determination." Mercantile Bank & Trust Co. v. Fidelity & Deposit Co., 750 F.2d 838, 841 (11th Cir.1985). Under this standard of review, which is different from the standard at class certification, we cannot affirm the district court's summary judgments on the promotion claims.
 
 A.
 
 44
 The district court granted summary judgment for Firestone on three of Ben Jones' claims: constructive discharge, promotion, and discriminatory assignment. Jones does not appeal the summary judgment on the constructive discharge claim.
 
 1.
 
 45
 Jones alleged that he was a victim of discrimination in the refusal of Firestone to promote him to a position above Store Manager. At summary judgment, the district court found no evidence of any specific opening available to Jones during the 180 day period before the filing of the EEOC charge. The district court further concluded that the claims could not be raised under the longer limitations period of section 1981 because of the rule enunciated in Patterson.
 
 
 46
 Jones claims that the record on summary judgment showed that there were vacancies available to him during the 180 days before he filed his EEOC charge. In the alternative, Jones claims that his promotion claims are cognizable under section 1981 despite Patterson. We reverse the grant of summary judgment on these promotion claims since there were genuine issues of material fact as to the existence and nature of vacancies to which Jones might have been promoted.
 
 
 47
 Four elements must be shown to make out a prima facie case of disparate treatment under either Title VII or section 1981:
 
 
 48
 The complainant in a Title VII trial must carry the initial burden under the statute of establishing a prima facie case of racial discrimination. This may be done by showing (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.
 
 
 49
 McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); see also Burdine, 450 U.S. at 253-54, 101 S.Ct. at 1094, 67 L.Ed.2d 207 (1981); cf. Patterson, 491 U.S. at 186-87, 109 S.Ct. at 2378.
 
 
 50
 The district court granted summary judgment for Firestone because it found that Jones produced no evidence of any vacancy above Store Manager in the Birmingham Market during the applicable 180 day period. In doing so, it assumed the Dahlem vacancy was irrelevant.
 
 
 51
 It may be that the Dahlem vacancy, the Sales Administrator position in the Non-Metro Market Zone, is irrelevant. However, we are unable to discern the reasoning of the district court on this point. Jones produced evidence which, if believed, showed that (i) Firestone did make inter-Zone transfers, and (ii) that he had expressed interest in transfers outside the Metro Market Zone. It is reasonable to infer from this evidence that he was qualified to fill the Dahlem vacancy. This is a genuine issue of material fact, and summary judgment was inappropriate on Jones' Title VII promotion claim.[10]
 
 
 52
 Jones' promotion claim may also be cognizable under section 1981. Again, the district court does not appear to have considered whether the Dahlem vacancy offered "an opportunity for a new and distinct relation between the employee and the employer." Patterson, 491 U.S. at 185-86, 109 S.Ct. at 2377. The record at summary judgment, construed in the light most favorable to the nonmovants, suggests that this is a genuine issue of material fact.
 
 
 53
 Since we find that summary judgment was inappropriate on the promotion claims of Ben Jones, we reverse and remand for further proceedings.
 
 2.
 
 54
 Jones also alleged that he was the victim of discriminatory assignment in that Firestone followed a practice of assigning black Store Managers to stores that had a predominantly black clientele. Such assignments effectively limited black managers to stores with lower income potentials. Again, the district court granted summary judgment, concluding that the record revealed no vacancies during the 180 day period before the EEOC charge was filed. The district court again found that Patterson precluded pursuit of this claim under section 1981.
 
 
 55
 Jones claims that the record on summary judgment showed that there were vacancies. He points to the court's certification opinion: "[Jones failed] to be selected by [the Market Manager] for a transfer to any of the several Store Manager positions that were filled during the period and which may have provided an opportunity for increased earnings, albeit at the same level." No. CV 88-P-0170-S, slip op. at 5-6 (N.D.Ala. Nov. 28, 1989). In the context of the opinion, this excerpt does not suggest that the district court found such vacancies, but merely that it assumed vacancies for the sake of argument. Even assuming such vacancies, the court rejected certification of the discriminatory assignment class for want of numerosity. Jones also ignores the lapse in time between the two opinions. The record before the court at summary judgment clearly showed that "there were no store manager vacancies between April 15, 1986 and August 20, 1986." No. CV 88-P-0170-S, slip op. at 8 n. 5 (N.D.Ala. June 5, 1990). The court correctly rejected this argument.
 
 
 56
 The district court was also correct in holding that store assignment claims are not cognizable under section 1981. As lateral transfers they did not rise "to the level of an opportunity for a new and distinct relation between the employee and the employer." Patterson, 491 U.S. at 185, 109 S.Ct. at 2377.
 
 
 57
 We affirm the summary judgment order in favor of Firestone on the store assignment claims.
 
 B.
 
 58
 Because we hold that it was improper to grant summary judgment for Firestone on Jones' promotion claims, we also remand the promotion claims of the Intervenors for further proceedings pursuant to the single filing rule. See Griffin, 823 F.2d at 1492 ("As long as at least one named plaintiff timely filed an EEOC charge, the precondition to a Title VII action is met for all other named plaintiffs and class members.").
 
 
 59
 Conversely, because we find that Jones did not have any other valid claims under Title VII or section 1981, we affirm the summary judgments as to the Intervenors' other claims.
 
 IV.
 
 60
 Jones proceeded to trial on his last two claims: demotion and retaliation. Factual conclusions reached by the district court are subject to a "clearly erroneous" standard of review on appeal. Fed.R.Civ.P. 52(a); see Anderson v. Bessemer City, 470 U.S. 564, 573-76, 105 S.Ct. 1504, 1511-12, 84 L.Ed.2d 518 (1985).
 
 
 61
 The elements of any claim under Title VII, which will necessarily vary in "differing fact situations" are (i) that the plaintiff is a member of a protected class, (ii) that the plaintiff was qualified for the position in question, (iii) that the plaintiff suffered an adverse employment decision, and (iv) that this adverse decision was causally related to the status of the plaintiff as a member of the protected class. McDonnell Douglas, 411 U.S. at 802 & n. 13, 93 S.Ct. at 1824 & n. 13.
 
 
 62
 The district court's statement of the elements of Jones' demotion and retaliation claims was substantially correct. On the demotion claim the court stated from the bench: "Mr. Jones has got to prove that he is a member of a protected group.... He's got to prove that an adverse employment action was taken.... He has got to prove that he was treated more harshly than persons not in the protected group under similar circumstances." The court found that Jones failed to demonstrate that "he was treated more harshly than persons not in the protected group under similar circumstances." This finding was not clearly erroneous.
 
 
 63
 On the retaliation charge the court stated: "Mr. Jones would have to show that he engaged in a protected activity, ... that some adverse employment action was taken against him, [and] a causal connection between the EEOC charge in 1980 and the action taken in August of 1986." The trial court found that Jones failed to establish such a causal connection. This finding was not clearly erroneous.
 
 V.
 
 64
 The district court acted within its discretion in declining to certify a class of black Firestone employees. It also acted appropriately in granting summary judgment on the non-promotion claims of Jones and the Intervenors. The trial verdicts in favor of Firestone were not erroneous. We affirm these rulings.
 
 
 65
 Summary judgment was inappropriate on Jones' promotion claims and on those of the Intervenors. We reverse these rulings and remand for further proceedings.
 
 
 66
 AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings.
 
 
 
 [1]
 "Title VII does not allow awards for compensatory or punitive damages; instead it limits available remedies to backpay, injunctions, and other equitable relief." United States v. Burke, --- U.S. ----, ----, 112 S.Ct. 1867, 1873, 119 L.Ed.2d 34 (1992)
 
 
 [2]
 Although originally assigned to Chief Judge Sam C. Pointer, Jr., the case was reassigned to Judge Edwin L. Nelson after the denial of class certification
 
 
 [3]
 In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981
 
 
 [4]
 42 U.S.C. § 2000e-5(e) (1988). This period may be extended to no more than 300 days if the aggrieved person first institutes "proceedings with a State or local agency with authority to grant or seek relief from such practice or institute criminal proceedings with respect thereto." Id
 
 
 [5]
 The district court restricted its examination to those positions within the Metro Market Zone
 
 
 [6]
 The court also stated:
 Jones' EEOC charge ... provides a potential basis for class certification and for intervention by non-filing plaintiffs with respect to claims relating to promotions to the position of Store Managers, and the transfers and demotions of Store Managers within the Birmingham market. His charge presumably also provides a similar foundation for other promotions, transfers, and demotions of lower-rated pivotal employees made by Franklin, the Birmingham Market Manager. Jones' charge does not, however, provide a basis for claims of discriminatory selection of persons for jobs above that of Store Manager, such as Market Manager or Store Administrator--decisions that are beyond the effective scope of Jones' charge and that would be made on a different level of the defendant by different persons.
 Id. at 6.
 
 
 [7]
 Rule 23(a) provides as follows:
 (a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.
 
 
 [8]
 That Act amended 42 U.S.C. § 1981 by defining the phrase "make and enforce contracts" to include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship." Civil Rights Act of 1991, Pub.L. No. 102-166, § 101, 105 Stat. 1071 (codified as amended at 42 U.S.C. § 1981)
 
 
 [9]
 We have recently held that the Act is not to be applied retroactively. See Bayner v. AT & T Technologies, Inc., 976 F.2d 1370, 1373 (11th Cir.1992) (per curiam)
 
 
 [10]
 The court, in the exercise of its broad discretion regarding certification of a class, was entitled to weigh the conflicting evidence regarding inter-Zone transfers and conclude that Jones was not eligible for the Dahlem vacancy. Nevertheless, the standard is very different for our review of summary judgment. The plaintiff's evidence, and the justifiable inferences from it, present a genuine issue of material fact which precluded summary judgment