**Sherry MORELAND, Plaintiff,**

v.

**MIAMI–DADE COUNTY, Defendant.**

**No. 02–20082–CIV.**

United States District Court,
S.D. Florida.

Nov. 13, 2002.

Donna Marie Ballman, Davie, FL, for Sherry Moreland, plaintiff.

William X. Candela, FTS, Dade County Attorney's Office, Miami, FL, for Miami–Dade County, defendant.

### ORDER GRANTING FINAL SUMMARY JUDGMENT

HUCK, District Judge.

THIS MATTER is before the Court upon the Defendant's Motion for Summary Judgment [DE# 23] and Plaintiff's Motion for Partial Summary Judgment [DE# 20]. The parties' motions, memoranda of law in response and reply, supplemental authori-

ty submitted by both parties, and oral argument have been considered. The Court concludes that Defendant is entitled to summary judgment on the federal and state racial discrimination claims brought under Title VII of the Civil Rights Act of 1964 (Count VI), the Florida Civil Rights Act (Count III), and 42 U.S.C. § 1983 (Count IV). Defendant is also entitled to summary judgment on the procedural due process claim brought under 42 U.S.C. § 1983 (Count IV). Supplemental jurisdiction over the remaining state law claims is declined.

## I. BACKGROUND

The Plaintiff, Sherry Moreland, is an African American woman. She was employed as a Correctional Officer I with the Miami–Dade County Corrections Department ("MDCC") when she began dating Lynn Strickland, a former inmate at a MDCC jail. Strickland moved into Moreland's apartment in July 1992 while on parole for numerous felonies. After living together about four months, Moreland discovered that Strickland was engaged in criminal activity. She promptly reported this to Strickland's probation officer, who put her in contact with a detective. Moreland went undercover and, as a result of her efforts, Strickland was sentenced to another twenty two years in jail. Thereafter, on July 5, 1993, MDCC promoted Moreland to a position as a sworn Corporal Officer of the Corrections Department.

At some point during 1992 or 1993, the Internal Affairs Department of MDCC initiated an investigation into allegations that Moreland had violated departmental rules by becoming romantically involved with Strickland. The investigation culminated in April 1996 with the issuance of a Disciplinary Action Report ("DAR") charging

Moreland with violating three rules: Rule 2.200.29 (Cooperation with Other Agencies), Rule 2.300.01 (Revealing Official Departmental Documents), and Rule 2–34 (Employee Association with Inmates, Ex-inmates, or a Criminal Element). All of the allegations related to these violations were based on events that occurred when Moreland was an unsworn Corrections Officer I, before she was promoted to the position of a sworn Corporal. Moreland had a spotless employment record until the DAR in 1996.

One year later, in April of 1997, Supervisor Donald Manning fired Moreland because of the violations outlined in the DAR. Moreland appealed the termination pursuant to § 2–47 of the Miami–Dade County Civil Service Code. An independent hearing examiner was appointed and received evidence. On the appeal, MDCC argued that Moreland had violated Rule 2.200.29 by either making inconsistent statements or giving perjured testimony during the proceedings against Strickland, and that she had "sandbagged" the government's case by testifying contrary to pre-trial statements she made to an Assistant United States Attorney during the investigation. The import of Rule 2.200.29, in MDCC's view, meant fully cooperating with law enforcement agencies and giving truthful testimony. On the issue of whether Moreland had violated Rule 2.20029, the hearing examiner stated that "[t]he weight of the evidence suggests that Moreland's testimony in the Strickland case was inconsistent with her testimony in this [civil service appeal] proceeding and contrary to what she initially told [the Assistant United States Attorney in the Strickland case]." MDCC, however, had never formally charged Moreland with, and did not fire her for lying, misrepresentation, falsification or perjury, even though

MDCC had evidence from which to draw such a conclusion long before terminating her.

The hearing examiner thus found no violation of Rule 2.200.29 when he issued his findings and recommendation on August 25, 1999. He did, however, conclude that Moreland had violated Rule 2–34 by failing to promptly notify her supervisor and/or the Internal Affairs Department about Strickland's criminal activity.[1] For violating Rule 2–34, the examiner recommended that Moreland be suspended without pay for twenty eight months, from May 3, 1997 to August 30, 1999. At that time Moreland had been fired from her job for over two years. Hence, the examiner found termination was an inappropriate sanction and recommended disciplinary action tantamount to "time served" with Moreland to be immediately reinstated to her sworn position as a Corporal.

The foregoing facts merely set the table for Moreland's case. She does not complain of the termination or appeal, the decisions of the Internal Affairs Department and Supervisor Manning, or the findings and recommendation of the hearing examiner. Her complaint arises from the County Manager's decision to demote her instead of accepting the hearing examiner's recommendation of a two year suspension without pay and reinstatement to her former position as a Corrections Corporal.

## II. UNDISPUTED FACTS [2]

The transcript and exhibits from Moreland's appeal hearing, along with the examiner's report were submitted to the County Manager, Merrett Stierheim, for review. Under § 2–47 of the Civil Service Code, Stierheim could "sustain, reverse or modify" the recommendation of the hear-

---

1. Rule 2–34 provides, in pertinent part, as follows:

   *Employee Association with Inmates, Ex–Inmates, or Criminal Element, Etc.*

   Employees will not, in the discharge of their duties and responsibilities, solicit, promise, accept, or grant, directly or indirectly, any improper favor or service that may influence the discharge of their duties or responsibilities.

   No employees on-duty or off-duty, except in the discharge of duty, may knowingly associate with any person(s) engaged in, or allegedly in, unlawful activities.

   A. *Inmates:*

   Employees shall maintain only professional relationships with inmates.

   . . .

   2. Additionally, employees shall not develop close, personal, intimate, or sexual relationships with inmates that the employees become acquainted with while the inmates are in the Department's custody.

   . . .

   B. *Ex–Inmates:*

   Association with ex-inmates (regardless of whether or not they are found guilty, sentenced, and served time) does *not* au-

   tomatically constitute a conflict which would require an end to the contact . . . However, the professional relationship standards applicable to current inmates applies to known or alleged ex-inmates, especially if they are, or appear to be, involved in criminal activity on a full time, part time, or on an occasional basis.

   C. *Criminal Element:*

   Knowledge by an employee of criminal activity may implicate, in fact or appearance, the employee in that person's criminal activity if the employee does nothing, or if the employee does not take sufficient action to separate himself from that person and/or the activity. An employee risks becoming a suspect himself. This relationship may also jeopardize the employee's employment with the county.

2. The facts are taken from Defendant's Amended Statement of Material Facts with attached exhibits ("Defs Facts at ¶ ___" and "Defs Ex ___") and Plaintiff's Response to Statement of Material Facts with attached exhibits ("Pltf Facts at ¶ ___" and "Pltf Ex ___").

ing examiner. (Pltf Facts at ¶ 3; Defs Ex 9 at p. 1.) Stierheim accepted the examiner's suggestion of a two year suspension without pay, but rejected the recommendation that Moreland be reinstated to the position of Corporal. Stierheim's decision was stated in a letter dated November 23, 1999:

> I accept the Hearing Examiner's factual findings, but do not accept his recommendation as to the appropriate level of discipline. Your failure to notify the department promptly of Mr. Strickland's criminal activities is an extremely serious offense. As a Correctional Officer, you are held to a higher standard than civilians and expected to help enforce the law, not to protect known criminals.
>
> I am troubled by your apparent lack of candor in the hearing. While the Department failed to charge you with misrepresentation or perjury, the Hearing Examiner found that your testimony was inconsistent at best. Your lack of complete candor calls your integrity as a Correctional Officer into question.
>
> . . .
>
> In light of the seriousness of your offense, and the ethical breaches as a sworn Correctional Officer, I have decided that you should not be reinstated to the County service as a Correctional Corporal.

(Def Ex 9 at p. 2.) In recognition of Moreland's otherwise satisfactory employment record and the different ethical standard required of a non-sworn employee, Stierheim set aside the termination and offered Moreland a demotion to a non-sworn position with a salary range comparable to that of a Correctional Officer. (Def Ex 9 at p. 2.) If she accepted this offer, the time period from termination until reinstatement to a non-sworn position would serve as a disciplinary suspension without pay. (Def Ex 9 at p. 2.) If Moreland accepted the offer, Stierheim indicated the Employee Relations Department would identify a position for which she qualified. (Def Ex 9 at p. 2.)

On December 23, 1999 Moreland filed a grievance, pursuant to Article 9 of the Collective Bargaining Agreement between MDCC and the Police Benevolent Association, alleging that Stierheim had engaged in ex-parte communication with the County Attorney's office before making his own final decision on the hearing examiner's findings. (Def Ex 11 and 2 at p. 19.) She did not, however, pursue this grievance to arbitration. (Pltf Facts at ¶ 10.)

Neither party succinctly articulates, nor does the record clearly reveal what happened over the next several months. Moreland did file a discrimination charge with the EEOC in July 2000. (Def Ex 14.) Apparently, MDCC did not reinstate Moreland to a position of comparable salary prior to the EEOC charge being filed, but kept her on a paid suspension with a reduced salary, and repeatedly said there were no positions available for her. (Pltf Add'l Facts at ¶ 7.) Finally, some time after Moreland filed the EEOC charge, MDCC placed her in a position with a salary lower than that of a Corporal. (Pltf Add'l Facts at ¶ 7.) The EEOC found reasonable cause to believe that a violation of Title VII had occurred and issued a determination letter to this effect in April 2001. (Def Ex 15.) Approximately four months later, the EEOC issued a right to sue letter. (Def Ex 16.)

Between the date of the EEOC's determination letter and right to sue letter, Moreland met with Stierheim's successor, Steve Shiver, to discuss her employment

status. (Pltf Facts at ¶ 11.) On August 21, 2001 Shiver offered to reinstate Moreland as a Correctional Officer provided she satisfied all qualifications for the position. Although this would have still been a demotion from Moreland's former Corporal position, at that point MDCC had already advised Moreland that she would not pass the background check for a sworn position. (Def Ex 13; Moreland Deposition at p. 18.)

Moreland rejected Shiver's offer and then filed a ten count complaint in state court against Miami–Dade County ("County"), which was removed to federal court. (Moreland Deposition at pp. 84–85.) Counts I and II are claims for violations of the Officer's Bill of Rights, codified at Florida Statutes Chapter 112.532. Counts III and VI are employment discrimination claims, pursuant to the Florida Civil Rights Act and Title VII, alleging that the County is liable for Stierheim's racial discrimination. Count IV is a claim under 42 U.S.C. § 1983 for violation of the right to equal protection and procedural due process guaranteed by the Fourteenth Amendment. Count VII is a claim for violation of the Florida constitutional guarantee of procedural due process. Counts VIII and IX are state common law claims for negligent race discrimination and negligent supervision of employees. Count X is a claim alleging that the County violated Florida Statutes Chapter 92.57 by retaliating against Moreland for giving testimony in the Strickland proceedings in response to a subpoena.

## II.  ANALYSIS

### A.  Summary Judgment Standard

A summary judgment is proper only if the record before the court shows that there is no genuine issue as to any materi-al fact and that the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The purpose of summary judgment is "to pierce the pleadings and assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)(quoting Fed.R.Civ.P. 56 advisory committee's note). In *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the Court held that summary judgment should be entered only against

> a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Id.* at 322–23, 106 S.Ct. 2548.

To prevail, the moving party must do one of two things: (1) show that the non-moving party has no evidence to support its case, or (2) present "affirmative evidence demonstrating that the non-moving party will be unable to prove its case at trial." *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437–38 (11th Cir.1991) (en banc); *Young v. City of Augusta, Ga.*, 59 F.3d 1160, 1170 (11th Cir.1995). In making this determination, all evidence and reasonable inferences

from the evidence are considered in the light most favorable to the nonmoving party. *Dibrell Bros. International, S.A. v. Banca Nazionale Del Lavoro*, 38 F.3d 1571, 1578 (11th Cir.1994).

## B. Employment Discrimination Claims [3]

■ Moreland, an African American, has sued the County under Title VII claiming disparate disciplinary treatment by County Manager Stierheim. Disparate treatment claims require proof of discriminatory intent by the defendant, which may be accomplished through either direct or circumstantial evidence. *Harris v. Shelby County Bd. of Educ.*, 99 F.3d 1078, 1083 (11th Cir.1996) (citations omitted). Moreland does not have direct evidence of discrimination and therefore must establish an initial presumption of intentional discrimination through the familiar *McDonnell Douglas* burden-shifting test. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

### 1. Plaintiff's *prima facie* case

■ To establish a *prima facie* case of disparate treatment under *McDonnell Douglas*, a plaintiff must show that she was: (1) a member of a protected class; (2) qualified for the position or entitled to the benefit sought; (3) subjected to adverse employment action; and (4) that the employer treated similarly situated employees outside the class more favorably.

*Id.* at 804, 93 S.Ct. 1817; *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir.1997). The elements for a *prima facie* case will necessarily vary depending on the factual situation and the type of employment action at issue. *See Jones v. Firestone Tire & Rubber Co.*, 977 F.2d 527, 537 (11th Cir.1992). "Demonstrating a *prima facie* case is not onerous; it requires only that the plaintiff establish facts adequate to permit an inference of discrimination." *Holifield*, 115 F.3d at 1562. Employees are similarly situated when they are involved in or accused of similar misconduct yet disciplined in different ways, *id.*, but the burden is on the plaintiff to show the similarity between his or her conduct and that of other employees who were treated differently, and not on the defendant to disprove their similarity. *Jones v. Gerwens*, 874 F.2d 1534, 1541 (11th Cir.1989). The only issue in this case is whether Moreland has established the fourth prong of her case.

To establish similarly situated employees who received more favorable disciplinary treatment, Moreland must show that her misconduct, found by the hearing examiner to be a violation of Rule 2–34, was similar to that of non-African American employees who violated Rule 2–34 or a similar rule, and that Stierheim imposed more severe discipline on Moreland than that imposed on the non-African employees for similar violations. Moreland relies on a summary of eleven employees, identified as Plaintiff's Exhibit C,[4] whom she claims are similarly situated. The Court

---

**3.** The reasoning behind the decision on the Title VII is equally applicable to the Florida Civil Rights claim.

**4.** The parties agree that the factual information in Exhibit C, a copy of which is attached, is accurate. One employee on the list, Kimberly Siplin, is an African American. Be-

cause she is a member of the same protected class as Moreland, she is not a valid comparator for purposes of the fourth prong of a disparate disciplinary treatment case.

presumes these employees all violated Rule 2–34 or a similar rule for purposes of this motion.

█ Moreland argues that here, as in *Anderson v. WBMG–42*, 253 F.3d 561 (11th Cir.2001), the Exhibit C employees are similarly situated because they were in the identical or a substantially similar chain of command because at least one of Moreland's decision makers was also involved with disciplining the comparators. Plaintiff's argument is well taken to the extent that a plaintiff's *prima facie* case does not fail just because the plaintiff and the comparators reported to different supervisors. *Id.* at 566 (explaining that *Jones v. Gerwens* stands for the proposition that different supervisors *"may* not be comparable" and does not stand for the proposition that different supervisors between plaintiff and comparators means plaintiff's case fails as a matter of law). The facts of this case, however, are more analogous to *Jones*, 874 F.2d at 1541–42 (11th Cir.1989) (holding that, to establish a *prima facie* case of discriminatory motive in a disparate disciplinary case, a plaintiff must show that middle and upper managers were aware of, and consciously overlooked, similar violations by other employees when plaintiff was disciplined).

Moreland has failed to adduce evidence showing that Stierheim consciously overlooked violations by the employees in Exhibit C when he disciplined Moreland more severely. Pursuant to Dade County Code § 2–47, the County Manager conducts an administrative review *only after* the hearing examiner renders an opinion on whether a rule has been violated. Only Vicky Cooper, discussed below, appealed her discipline. Since none of the other employees in Exhibit C appealed, an independent hearing examiner never found that any of the comparators violated a rule. Based on the civil appeal process, the Court finds Stierheim did not review the comparators' cases and thus had no reason to know about the misconduct of any employee listed in Exhibit C. Moreland speculates, but has not pointed to evidence that Stierheim actually knew these other employees had violated similar rules, and ignored the fact that the supervisors had disciplined these other employees more leniently than he disciplined Moreland.[5] In fact, Moreland admits that "it is impossible to determine what level of involvement" Stierheim played in the other employee's discipline because MDCC did not produce detailed information regarding at least eight of these individuals. (Pltf memo at 28.) Although Stierheim, as the higher level manager, could have discussed these other disciplinary cases with the supervisors even though no appeals were taken, there is no evidence to support this argument. The record evidence thus does not establish that Stierheim knew about the misconduct of any employee in Exhibit C – except for Vicky Cooper.

Moreland lists Vicky Cooper, a white employee, as a comparator because she was charged with violating the same offense as Moreland but was only suspended

---

**5.** In paragraph 21 of Moreland's Statement of Additional Undisputed Facts, Moreland repeatedly states that Stierheim was the County Manager when the comparators were disciplined. The fact that Stierheim held this position, however, is not evidence that he personally knew of each comparators' misconduct or the discipline each supervisor imposed. The record evidence, and the only reasonable inference from the evidence, is that Stierheim knew about disciplinary situations only after an employee appealed a disciplinary decision to a hearing examiner.

for twenty days. Cooper, unlike the other employees in Exhibit C, pursued an appeal through the civil service process. The examiner's report was sent to Stierheim. Because Stierheim reviewed Cooper's case, she may be a closer comparator than any other employee Moreland has identified. Nevertheless, Cooper is not similarly situated because, unlike Moreland, the hearing examiner found Cooper did not violate any rule and Stierheim, therefore, did not discipline Cooper.

Moreland's reliance on *Anderson* is misplaced. Every comparator in *Anderson* reported to the same middle and upper manager. *Anderson*, 253 F.3d at 566. Here the purported comparators did not all report to Manning. Four reported to an "unknown" supervisor and one reported to Spears. It is unclear whether two employees reported to Manning or Spears. Similarly, Exhibit C is ambiguous with respect to one other employee, who reported either to Manning, Spears, or Lawrence. Moreover, Stierheim was not the County Manager when six of these employees were disciplined. Thus, Exhibit C proves that all of the purported comparators were not supervised by the same middle manager (Manning) or upper manager (Stierheim) as Moreland. In fact only four employees were supervised by both Manning and Stierheim,[6] but even these four do not rise to the level of comparators because Moreland has limited her complaint to Stierheim's decision.

██ Although the motivations of both upper and middle management are pertinent to disparate treatment analysis because none of the participants in the decision making process should be influenced by racial bias, *id.*, the principle has no application here because Moreland does not take issue with Manning's decision to terminate her employment. Instead, Moreland complains only of Stierheim's decision to demote her. At oral argument Moreland disavowed any claim that Manning made a racially biased decision to fire her. So whether Manning disciplined four other employees more leniently for similar rule violations is irrelevant to Moreland's sole claim that Stierheim was racially biased in disciplining her.[7]

In summary, taking all the evidence and reasonable inferences in the light most favorable to Moreland, it is impossible to identify any non-African American employee in Exhibit C that Stierheim disciplined more favorably for violating a MDCC rule. Moreland's evidence fails to show that Stierheim knew that these purported comparators committed misconduct similar to Moreland's violation of Rule 2–34. Furthermore, even if Stierheim knew about the other violations, the evidence does not show that Stierheim consciously overlooked those violations when he disciplined Moreland more severely. *See Jones*, 874 F.2d at 1541–42. Exhibit C simply does not set forth any valid comparators.

In addition, Stierheim only reviewed the hearing examiner's recommendation, the transcript of the hearing and the exhibits introduced there, before concluding that demotion to a non-sworn position was the

---

**6.** Mercedes Ruiz, Yvonne Guerra, Nilo Sierra, and Roberto Garcia.

**7.** Even if the other employees in Exhibit C are considered (Costanzo, Careaga, DiMaio, Hernandez, Garcia, Davis, and Delgado), the fact that Lawrence, Spears, or some unknown supervisor disciplined other employees more leniently would be irrelevant to the discipline Stierheim imposed on Moreland, given that there is no evidence Stierheim knew about the other employees' violations.

appropriate level of discipline in Moreland's situation. (Def Ex 9, Def Facts at ¶ 7, Stierheim Deposition at pp. 6, 10, 14, 26.) Nothing in the transcript or the records admitted at the civil appeal hearing indicated that Moreland was African American. Race could not and did not factor into Stierheim's decision because he did not know Moreland's race when he demoted her. (Stierheim Deposition at pp. 25–27.) Stierheim's testimony on this issue stands unrefuted in the record. Moreland's *prima facie* case thus fails because there is no evidence from which a fact finder could conclude that Stierheim decided to impose harsher discipline on Moreland because of her race. *See Lubetsky v. Applied Card Systems, Inc.,* 296 F.3d 1301, 1306 (11th Cir.2002) (evaluating a disparate treatment claim of religious discrimination by focusing on the "actual knowledge and actions of the decision-maker"); *Silvera v. Orange County School Bd.,* 244 F.3d 1253, 1259 (11th Cir.2001) ("[d]iscrimination is about actual knowledge, and real intent, not constructive knowledge and assumed intent").

For all of the foregoing reasons, Moreland has failed to raise the inference that Stierheim acted with a discriminatory motive by failing to establish the fourth prong of her *prima facie* case.

### 2. Defendant's legitimate, non-discriminatory reason

■ Even if Moreland had established a *prima facie* case, MDCC has demonstrated a legitimate, non-discriminatory reason for demoting Moreland. *See Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (citations omitted) (explaining the burden at this stage is one of production, not persuasion, and employer need

only point to admissible evidence from which a fact-finder could reasonably conclude that the challenged action was taken for legitimate, non-discriminatory reasons); *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (holding defendant's evidence of non-discriminatory reason for employment action "can involve no credibility assessment"). The hearing examiner unequivocally found that Moreland had violated a MDCC rule, a finding that Moreland has not contested in this litigation. Section 2–47 of the County's Civil Service Code gave Stierheim the unfettered discretion to reverse Manning's original decision to terminate Moreland and to modify discipline recommended by a hearing examiner. The examiner's finding that Moreland violated Rule 2–34, even if wrong, is a legitimate, non-discriminatory explanation for Stierheim's decision to demote Moreland. *See Chapman v. AI Transport,* 229 F.3d 1012, 1030–31 (11th Cir.2000) (holding defendant may terminate an employee for good or bad reason without violating federal law); *Nix v. WLCY Radio/Rahall Communications,* 738 F.2d 1181, 1187 (11th Cir. 1984) (holding an employee may be fired "for good reason, bad reason, reason based on erroneous facts, or no reason at all, so long as its action is not for a discriminatory reason").

### 3. Plaintiff's evidence of pretext

■ Once the employer has met the burden to produce evidence from which the fact finder could conclude that the contested action (Moreland's demotion) was taken for a non-discriminatory reason, the *McDonnell Douglas* presumption of discrimination created by the plaintiff's *prima facie* showing "drops" from the case. *See St. Mary's,* 509 U.S. at 510–11, 113 S.Ct. 2742; *Texas Dept. of Communi-*

*ty Affairs v. Burdine,* 450 U.S. 248, 255, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). The burden then shifts back to the plaintiff to show that the proffered reason was in fact a pretext for intentional discrimination. *Burdine,* 450 U.S. at 256, 101 S.Ct. 1089. A plaintiff may show pretext and survive summary judgment by demonstrating that a genuine issue of material fact exists with respect to the truth or falsity of the employer's proffered reasons for the action taken. *See St. Mary's,* 509 U.S. at 511, 113 S.Ct. 2742; *Combs v. Plantation Patterns,* 106 F.3d 1519, 1534 (11ᵗʰ Cir.1997). The plaintiff need not necessarily put forth additional affirmative evidence at this stage; the *prima facie* case, combined with sufficient evidence to find the employer's justification is false, may permit the fact-finder to conclude that discrimination was the real reason for the action. *See St. Mary's,* 509 U.S. at 511, 113 S.Ct. 2742. Proof that the defendant's explanation is "unworthy of credence" is a form of circumstantial evidence that may be probative of intentional discrimination. *Combs,* 106 F.3d at 1529–30.

Moreland argues that the comparators in Exhibit C are sufficient evidence to establish pretext. However, as discussed above, Exhibit C is not a summary of employees who are valid comparators.

Moreland next argues that pretext can be inferred from MDCC's "fail[ure] to follow the policies in the CBA [collective bargaining agreement] and the Police Officer's Bill of Rights, both of which are its own policies and procedures," relying on cases from the Seventh and Ninth Circuits. Setting aside whether the principle is or should be followed in the Eleventh Circuit, Moreland did not identify, with respect to this argument, the specific policies or the relevant part of the Officer's Bill of Rights

upon which she relies. Moreland also did not articulate how the failure to follow certain policies shows that Stierheim's reason for demoting Moreland is false or unworthy of credence. Accordingly, even if Moreland had stated a *prima facie* case, she has not rebutted the County's nondiscriminatory reason for the demotion.

### C. Section 1983 Claims

Moreland has sued MDCC, pursuant to 42 U.S.C. § 1983, for violating the Fourteenth Amendment right to procedural due process by failing to inform her and thereby preventing her from defending the charges against her. She also claims Stierheim engaged in *ex parte* communications with the County Attorney and others before he decided to demote her. The § 1983 claim for a procedural due process violation fails under both theories.

In *McKinney v. Pate,* the Eleventh Circuit reiterated that "a procedural due process violation is not complete 'unless and until the [s]tate fails to provide due process.'" *McKinney v. Pate,* 20 F.3d 1550, 1557 (11ᵗʰ Cir.1994) (quoting *Zinermon v. Burch,* 494 U.S. 113, 126, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990)). "[O]nly when the state refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation actionable under section 1983 arise." *Id.* A procedural due process violation can be remedied in a post-termination review by a state court. *Id.* at 1563.

The Eleventh Circuit has consistently held that a § 1983 due process claim will not lie unless state procedures are inadequate. For example, in *Horton v. Board of County Commissioners of Flagler County,* the court explained that "the *McKinney* rule looks to the existence of an

opportunity–to whether the state courts, if asked, generally would provide an adequate remedy for the procedural deprivation ... If state courts would, then there is no federal procedural due process violation regardless of whether the plaintiff has taken advantage of the state remedy or attempted to do so." *Horton v. Board of County Com'rs of Flagler County,* 202 F.3d 1297, 1300 (11th Cir.2000). Moreover, "[i]f adequate state remedies were available but the plaintiff failed to take advantage of them, the plaintiff cannot rely on that failure to claim that the state deprived him of procedural due process." *Cotton v. Jackson,* 216 F.3d 1328, 1331 (11th Cir. 2000).

█ Dade County Code, § 2.47.1, expressly provides that "[t]he County Manager's decision shall be subject to review in accordance with Florida Appellate Rules." This ordinance provided Moreland with a state remedy for any deprivation of due process she suffered.[8] She could have appealed Stierheim's decision to the state circuit court, but failed to do so. Moreland's argument – that she was told by a County employee that the County Manager's decision was final and she could not challenge it – is unavailing. The only relevant inquiry is whether an adequate state remedy was available to redress her claim. Because the state court system provided Moreland with an avenue to rectify the alleged deprivation, her § 1983 claim based on a federal due process violation fails as a matter of law.

█ Moreland alternatively claims the County engaged in a pattern, policy or

practice of race discrimination by disciplining her more severely than non-African American employees, in violation of the Equal Protection Clause. This claim also fails. A § 1983 action may be brought against a municipality only where the alleged constitutional injury was caused by a policy, practice or custom maintained by the municipality. *Monell v. Dept. of Social Services,* 436 U.S. 658, 694–95, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A "policy, practice, or custom" is not limited to "official" pronouncements such as formal or written laws, but may also include an "unofficial" policy, practice, or custom that is so predominant that it can be considered to have the "force of law." *Id.*

Here, there is no evidence that the County allows discrimination based on race. In fact, the only record evidence is the County's charter, which states that it is the policy of the County to make employment decisions without regard to "race ... national origin ... ancestry ... and/or place of birth." (Def Ex 21.) Moreland asserts that the County maintains several discriminatory policies and customs, but has not produced any evidence of such policies and customs. Accordingly, the Court concludes that Moreland has not established an element essential to her § 1983 claim for racial discrimination.

### III. CONCLUSION

For the foregoing reasons, Defendant Miami–Dade County motion is GRANTED with respect to the claims for violation of Title VII (Count VI), the Florida Civil Rights Act (Count III), and 42 U.S.C.

**8.** Moreland knew of her appeal right. The Collective Bargaining Agreement Between Metropolitan Dade County and the Dade County Police Benevolent Association states, in relevant part: "The parties agree that Section 2–47 of the Code of Metropolitan Dade County will be the exclusive method of disciplinary appeal for all Dade County employees *exclusive of appeals to the judicial system."* (Def Ex 12 at p. 23, emphasis added.)

§ 1983 (Count IV). Plaintiff's Motion for Partial Summary Judgment is DENIED with respect to the federal due process claim (Count IV) for the reasons stated in Section C. There being no federal claims remaining, the Court declines to exercise supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(c)(3), over Counts I, II, VII, VIII, IX, and X. In addition, the state law claims in Counts I, II, VII, VIII, and X will not be heard as they present novel causes of action that are more appropriately adjudicated by a state court. *See* 28 U.S.C. § 1367(c)(1).

The Clerk of the Court is directed to DENY all other pending motions as moot and mark this case CLOSED.

## Summary of Comparator Evidence

| Comparator | Race | Violation charged | Offense # | Discipline | Director | Manager |
|---|---|---|---|---|---|---|
| Sherry Moreland | B | Assoc. w/ inmates | 260 | Term/demotion+ susp/ 2 years | Manning/ Spears | Stierheim |
| Laura Costanzo | H | Assoc. w/ inmates | 260 | None | Manning/ Spears | Stierheim |
| Mercedes Ruiz | H | Assoc. w/ inmates | 260 | Susp/10 days | Manning | Stierheim |
| Yvonne Guerra | H | Assoc. w/ inmates | 260 | Susp/10 days | Manning | Stierheim |
| Donna Careaga | H | Assoc. w/ criminals | 210 | Susp/10 days | Unk. | Unk. |
| Diane DiMaio | W | Had relationship w/ inmate, was given permission to marry him inside prison | Not charged | None | Unk. | Unk. |
| Vicky Cooper | W | Assoc. w/ inmates | 260 | Susp/20 days | Lawrence/ Manning/ Spears | Unk. |
| Kimberly Siplin | B | Assoc. w/ inmates | 260 | Term. | Manning | Stierheim |
| Nilo Sierra | H | Assoc. w/ inmates | 260 | None | Manning | Stierheim |
| Jose Hernandez | H | Assoc. w/ inmates | 260/unk. | Letter of underst. | Spears | Manning |
| Roberto Garcia | H | Fraud/forgery/ falsification | 550 | Allowed to resign | Manning/ Spears | Stierheim |
| Curtis Davis | W | Had relationship w/ inmate | Not charged | None | Unk. | Unk. |
| Nelson Delgado | H | Death threat/use of weapon | Not charged | None | Unk. | Unk. |

EXHIBIT C