847 F.2d 1480
 46 Fair Empl.Prac.Cas. 1666,
28 Wage & Hour Cas. (BN 1116,
46 Empl. Prac. Dec. P 38,077,
109 Lab.Cas. P 35,092, 47 Ed. Law Rep. 52
 Kathleen Johnson WU, Plaintiff-Appellant,
v.
Dr. Joab THOMAS, President of the University of Alabama, in
his official capacity; Douglas Jones, Dean of the College
of Arts and Sciences, officially and in his individual
capacity, and the Board of Trustees of the University of
Alabama, a body corporate, Defendants-Appellees.
 No. 86-7817.
 United States Court of Appeals,
Eleventh Circuit.
 June 7, 1988.
 
 1
 Susan Williams Reeves, Reeves & Still, Birmingham, Ala., for plaintiff-appellant.
 
 
 2
 Paul E. Skidmore, Stanley Jay Murphy, Tuscaloosa, Ala., for defendants-appellees.
 
 
 3
 Appeal from the United States District Court for the Northern District of Alabama.
 
 
 4
 Before RONEY, Chief Judge, TJOFLAT, Circuit Judge, and PAUL*, District Judge.
 
 PAUL, District Judge:
 FACTS
 
 5
 Appellant, Kathleen Johnson Wu, is an associate professor in the Department of Philosophy at the University of Alabama, Tuscaloosa, Alabama, having been hired into that department in 1972 at the rank of assistant professor. Appellant was promoted to the rank of associate professor in 1975 and received tenure in 1976. The facts concerning appellant's schooling and employment history, both before and after being employed at the University of Alabama, are chronicled in the memorandum opinion of the district judge and are not in serious dispute. The inferences and conclusions to be drawn from these facts are disputed.
 
 
 6
 Essentially, appellant was hired by the University of Alabama because it was vigorously trying to recruit her husband, Dr. H.K. Wu, who was then Chairman of the Department of Economics at Boston University, and he required, as a condition to his coming to the University of Alabama, that his wife also be hired. The deal was struck and appellant was offered, and accepted, a regular appointment as an assistant professor in the Department of Philosophy at an agreed salary of $10,500 for a nine month teaching assignment. It appears from the record that this beginning salary was commensurate with her training and experience and comparable to that of Dr. Norvin Richards, a male faculty member hired by the University of Alabama during the preceding academic year (1970-71) as an assistant professor in the Department of Philosophy at a rate of $10,200 for a nine month term; at the time appellant was hired, Dr. Richard's salary was raised to $10,700 for the 1971-72 academic year. Dr. Richards is noted here because he is the individual appellant has chosen as her major comparator to show that female faculty members are treated less favorably than male faculty members, that is, are discriminated against on account of sex.
 
 
 7
 In 1975, appellant was promoted to the rank of associate professor; she applied for promotion to full professor in each of the academic years 1980-81, 1982-83, and 1983-84 and was denied promotion on each occasion. It is the denial of promotion to full professor that instigated this lawsuit.
 
 
 8
 The record shows that decisions on faculty promotions are based on a series of reviews and recommendations from several levels within the University, from the departmental level up to the President of the University, with the president having ultimate or final word on each promotion. Further, there is no quota on the number of full professorships available at the University of Alabama and no competition among the faculty for such promotion. The only competition for promotion to full professor is from within one's self to obtain the degree of scholarly work, teaching, and service that would merit such promotion.
 
 
 9
 The record also shows that beginning with the tenure of Dr. Joab Thomas as President of the University of Alabama, there was an increased focus and purpose to raise the level of academic performance and scholarship, with renewed emphasis on research, so as to make the University of Alabama a major research institution. To accomplish this goal, it appears from the record that, whatever the criteria employed before 1981 (when Dr. Thomas became President of the University), the focus thereafter in considering promotions was the necessity for research productivity. The record further shows a higher level of scrutiny to which promotions, pay raise, and sabbatical leave recommendations were received and acted upon the by upper levels of administration. (Tr. 21). As found by the trial judge "... there is an even greater emphasis on continuing research and scholarship given to applicants for promotion to the rank of full professor, as compared with applicants for promotion to lower ranks or applicants for tenure." (pp. 19-20 of memorandum opinion).
 
 
 10
 The appellant filed her amended complaint for relief against Dr. Joab Thomas, in his official capacity as President of the University of Alabama; Douglas Jones, Dean of the College of Arts and Sciences in both his individual and official capacity; and the Board of Trustees of the University of Alabama in four counts:
 
 
 11
 Count I--based on a denial of "due process" under the United States and Alabama Constitutions, alleging all defendants acted arbitrarily in denying her promotion to full professor;
 
 
 12
 Count II--based on a denial of "equal protection" under the United States Constitution, 42 U.S.C. Secs. 1983 and 2000e, alleging she was denied promotion to full professor on account of her sex, that is, she is female;
 
 
 13
 Count III--alleging a "breach of agreement" causing her economic and professional injury as well as mental distress; and
 
 
 14
 Count IV--based on the Equal Pay Act of 1963, 29 U.S.C. Sec. 206, alleging discrimination in pay on account of her sex.
 
 Appellant requested the court to:
 
 15
 1) require defendants to confer upon her the rank of full professor;
 
 
 16
 2) award compensatory and liquidated damages for violation of the Equal Pay Act;
 
 
 17
 3) award back-pay and pre-judgment interest for violation of 42 U.S.C. Secs. 1983 and 2000e et seq.;
 
 
 18
 4) award compensatory and punitive damages against the defendants Douglas Jones and Joab Thomas for breach of contract; and
 
 
 19
 5) award attorney fees under 42 U.S.C. Sec. 1988.
 
 
 20
 The defendant Douglas Jones was dismissed as a party-defendant by the court, both in his individual and official capacities, in the pre-trial order of May 22, 1985. (RA-Ex. 33); Count three, the plaintiff's breach of contract claim, was dismissed by the court on March 7, 1985 (RA-Ex. 19) because (a) as an alleged oral contract against the defendants Jones and Thomas in their "official capacity" it was subject to dismissal under Alabama law of sovereign immunity, and (b) individually, based on the "... oral representation of plaintiff's counsel ... that plaintiff does not claim to have a contract with any individual defendant."
 
 
 21
 The court alternatively declined to exercise the pendent state law jurisdiction on the contract claim, fraud claim, or claim based upon the Alabama Constitution (RA-Ex. 19).
 
 
 22
 Summary judgment was entered in favor of the defendants as to plaintiff's 42 U.S.C. Secs. 2000e et seq. claim pertaining to the application for promotion in both the 1981 and 1982 applications, leaving only the plaintiff's 1983 denial of promotion for trial under 42 U.S.C. Secs. 2000e et seq. Defendant's motion for summary judgment as to the plaintiff's Equal Pay Act claim was denied, leaving this issue also for trial, along with plaintiff's prospective claim for relief under 42 U.S.C. Sec. 1983 and the Fourteenth Amendment. (These rulings were actually made in open court on March 31, 1986 [Vol. 1 of trial transcript] but were memorialized by a written order on May 20, 1986 [RA-Ex. 63].
 
 DISCUSSION
 A. Title VII
 1. Discriminatory Intent
 
 23
 Appellant contends that the district court erroneously ruled that appellees did not discriminate against her on the basis of sex in their promotional decisions. A complainant in a suit brought under Title VII of the Civil Rights Act of 1964, Secs. 701 et seq., 42 U.S.C. Secs. 2000e et seq., bears the burden of proving a prima facie case of discrimination. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). To establish a prima facie case of discrimination in promotion, a plaintiff must prove: (1) he or she is a member of a protected minority; (2) was qualified for and applied for the promotion; (3) was rejected despite these qualifications; and (4) other equally or less qualified employees who were not members of the protected minority were promoted. Perryman v. Johnson Products Co., Inc., 698 F.2d 1138, 1142 n. 7 (11th Cir.1983). Once the plaintiff has established a prima facie case of discrimination, the burden shifts to the employer "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." McDonnell Douglas, 411 U.S. at 802, 93 S.Ct. at 1824. If the defendant carries this burden of production, the plaintiff must either "directly persuad[e] the court that a discriminatory reason more likely motivated the employer or indirectly [prove discrimination] by showing that the employer's proffered explanation is unworthy of credence." Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981).
 
 
 24
 The district court determined that appellant failed to establish a prima facie case of sex discrimination. A district court's findings of fact are subject to the clearly erroneous standard of review enunciated in Rule 52(a), Federal Rules of Civil Procedure. "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). "This standard plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently." Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). After a thorough examination of the record and review of the testimony, we cannot conclude that the district court's findings are clearly erroneous.
 
 
 25
 The district court correctly concluded that appellant failed to show she was qualified for the position of professor and that an equally or less qualified male was promoted to professor during that time. According to the 1978 edition of the faculty handbook, an individual seeking promotion to the rank of professor should show, among other things, evidence of continuing scholarship and contribution. Since the arrival in 1981 of Dr. Joab Thomas as President of the University of Alabama, the standards for promotion have been elevated with increased attention to evidence of continuing research and scholarly works. The record reveals, and the district court found, that although appellant demonstrated a commendable record of scholarship upon her application for and advancement to associate professor in 1974, her level of productivity declined significantly thereafter. Between the years 1975 and the time of her first application for full professor in 1981, appellant's scholarship decreased by almost half. From 1981 until the time of trial, appellant failed to produce any published journal articles. Appellant clearly failed to show she was qualified for promotion to professor.
 
 
 26
 Appellant also failed to prove that an equally or less qualified male was promoted during the time of her promotional application. In 1981 and 1982, Norvin Richards, associate professor in the Department of Philosophy, submitted applications for promotion to professor and was likewise rejected. Comparatively, the record discloses, and the district court found, that Richards was more qualified than appellant as evidenced by the regularity and recency of his publications. The documentary and testimonial evidence further supports the district court's conclusion that other proffered comparators displayed qualifications superior to those of appellant.
 
 
 27
 In sum, the record evidence supports the district court's conclusion that appellant failed to prove a prima facie case of discrimination based on sex. Notwithstanding appellant's failure to establish a prima facie case, the district court considered whether appellees articulated a legitimate, nondiscriminatory reason for their decision not to promote appellant. Appellees' proffered explanation that appellant was not promoted because of her lack of continuing research and scholarship is substantiated by the testimonial and documentary evidence adduced at trial. Accordingly, we cannot conclude that the district court's factual findings are clearly erroneous.
 
 2. Disparate Impact
 
 28
 Appellant contends that the district court erred in its determination that appellant had neither alleged nor introduced evidence supporting recovery under a disparate impact theory. We disagree. Our review of the record shows that appellant did not allege disparate impact in the second amended complaint and did not argue the theory at trial. During appellant's opening argument, no mention was made of intent to proceed under disparate impact theory. We conclude that appellant did not present a disparate impact claim to the district court and, therefore, the court's failure to examine the evidence in light of that theory is not clear error. See Smith v. Horner, 839 F.2d 1530, 1535 (11th Cir.1988).
 
 B. Section 1983
 
 29
 Appellant's action is also brought pursuant to 42 U.S.C. Sec. 1983 and alleges that by discriminatorily denying her promotion to professor, appellees abridged her constitutional rights to due process and equal protection under the fourteenth amendment. The district court properly found that there was no merit to appellant's claim because a prospective promotion is not a property or liberty interest protected by the fourteenth amendment. See Doyle v. University of Alabama in Birmingham, 680 F.2d 1323, 1326 (11th Cir.1982) ("no protected property interest in the mere recommendation for a raise"); see also, Clark v. Whiting, 607 F.2d 634, 641 (4th Cir.1979). Moreover, the same factors pertinent to our decision on appellant's Title VII claim persuade us that the district court did not err in finding no evidence of discriminatory motive on the part of appellees in refusing to promote appellant to professor. The substantiated findings demonstrate that appellant was denied the position because she failed to demonstrate continuing scholarship.
 
 C. Equal Pay Act
 
 30
 Appellant contends that the district court erroneously failed to find that she was a victim of discrimination in pay. To establish a prima facie case under the Equal Pay Act of 1963, 29 U.S.C. Sec. 206(d), a complainant "must show that an employer pays different wages to employees of opposite sexes 'for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.' " Corning Glass Works v. Brennan, 417 U.S. 188, 195, 94 S.Ct. 2223, 2228, 41 L.Ed.2d 1 (1974) (quoting 29 U.S.C. Sec. 206, 29 U.S.C.A. Sec. 206(d)(1)). Once a plaintiff makes out a prima facie case, the burden shifts to the employer to prove that the difference in pay is justified by one of the four exceptions in the Equal Pay Act: "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex." Corning Glass Works, 417 U.S. at 196, 94 S.Ct. at 2229 (quoting 29 U.S.C. Sec. 206(d)(1)).
 
 
 31
 The district court correctly concluded that factors other than sex justified the pay disparity between appellant and the primary comparator, Norvin Richards. The record shows, and the district court found, that appellant was hired as an assistant professor in the Department of Philosophy for the academic year 1972-73 at a salary of $10,500. Richards was hired two years earlier as an assistant professor at a salary of $10,200. As of 1972, his salary had been raised to $11,350. Initially, the district court concluded that an action based on the pay disparity in original pay is barred by the applicable statute of limitations in 29 U.S.C. Sec. 255(a). Nonetheless, the district court found that the $850 difference is explainable, in part, by Richards' greater teaching experience. The record reveals additional contributions by Richards, over those of appellant, through his duties as acting chairperson of the department and participation in the Honors Program. Any present pay disparity can be further justified by Richards' more recent and regular scholarly production as discussed above.
 
 
 32
 Appellant attempted to demonstrate sex-based pay disparity through the salary analyses of expert witness George Ignatin. The testimonial evidence reveals that these calculations failed to take into account nondiscriminatory factors that might affect salary such as seniority, teaching ability and scholarly production and, further, failed to compare the salaries of all Department of Philosophy faculty holding substantially equal jobs. For these reasons, we cannot find that the district court committed clear error in the probative weight it assigned to the analyses of appellant's salary expert.
 
 D. Pendent Jurisdiction
 
 33
 By order dated March 8, 1985, the district court dismissed appellant's claims based on state law. Appellant contends that the district court abused its discretion in refusing to exercise pendent jurisdiction. We disagree. "It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims...." United Mine Workers of America v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). After consideration of the factors set forth in United Mine Workers of America v. Gibbs, the district court determined that additional legal theories would increase the likelihood of jury confusion and that dismissal would promote judicial economy and fairness to the litigants. We cannot conclude that district court's decision to not exercise pendent jurisdiction constitutes an abuse of discretion in this case.
 
 E. Sovereign Immunity
 
 34
 Appellant's second amended complaint contained breach of contract allegations asserted against defendant Douglas Jones, Dean of the College of Arts and Sciences, in both his official and individual capacities. By order dated May 22, 1986, the district court dismissed defendant Jones from the lawsuit. Although no reason is stated in that order for the dismissal, the district court's reasoning appears in an earlier order wherein it is stated that defendant Jones is dismissed in his official capacity based on Alabama law of sovereign immunity and in his individual capacity based on oral representations of appellant's counsel that plaintiff had no contract claim with any individual defendant. We are cognizant that, under Alabama law, actions brought to compel state officials to perform their legal duties are not barred by constitutional sovereign immunity. Stark v. Troy State University, 514 So.2d 46, 50 (Ala.1987). Appellant's second amended complaint seeks to compel defendants to confer upon her a full professorship. However, defendant Jones has no ability to promote appellant to professor. The record shows, and appellant recognizes in her complaint, that Jones makes recommendations which are either finally approved or disapproved by Dr. Joab Thomas. Accordingly, the district court did not err in dismissing him from this lawsuit. See Stark v. Troy State University, 514 So.2d 46 (Ala.1987).
 
 CONCLUSION
 
 35
 Appellant failed to establish a prima facie case of discrimination in employment based on sex, and appellees articulated nondiscriminatory reasons for failure to promote her. Therefore, we hold that appellant has failed to demonstrate that appellees discriminated against her in their promotional decisions. In addition, appellees established justifiable reasons for the minimal pay disparity existing between Norvin Richards and appellant. For the reasons stated above, the judgment of the district court is
 
 
 36
 AFFIRMED.
 
 
 
 *
 Honorable Maurice M. Paul, U.S. District Judge for the Northern District of Florida, sitting by designation