[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOV 14, 2007
THOMAS K. KAHN
CLERK

_____

No. 07-11528
Non-Argument Calendar

_____

D. C. Docket No. 05-00163-CV-5-RS-EMT

CHRISTY MATHIS,

Plaintiff-Appellant,

versus

WACHOVIA BANK, formerly known as Southtrust,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

**(November 14, 2007)**

Before MARCUS, WILSON and FAY, Circuit Judges.

PER CURIAM:

Christy Mathis, an African-American female working as a teller supervisor

for Wachovia Bank ("Wachovia"), appeals the district court's grant of summary

judgment in favor of Wachovia on her complaint alleging disparate treatment

discrimination under Title VII; the Civil Rights Act of 1866, 42 U.S.C. § 1981; and

the Florida Civil Rights Act of 1992, Chapter 760 of the Florida Statutes.[1]  For the

reasons discussed below, we affirm the district court's grant of summary judgment.

Mathis specifically alleged the following instances of discriminatory failure

to promote: (1) Jarod Griffin, a white employee, was hired for a Financial Services

Representative ("FSR") position instead of her; (2) Lynette Piper, a Native

American employee, was hired for a Financial Center Manager ("FCM") position

instead of her; and (3) Jason McCormick, a white employee, was hired for a

Branch Operations Manager ("BOM") position that was not publicized or

otherwise offered to her.

Mathis also alleged the following instances of discriminatory discipline:

(1) she was put on probation for cashing a $3,000 check without the requisite

approval, thereby costing Wachovia $3,000 when the check was returned for

insufficient funds, but Griffin was not put on probation for failing to apply the

proper holds when depositing $1,600 and $1,100 credit card checks that later were

---

[1] Along with the disparate treatment claim, Mathis also raised several other claims before the district court, including (1) a retaliation claim; (2) a disparate impact claim; (3) a pattern and practice claim; and (4) a hostile environment claim.  On appeal, however, Mathis fails to address these claims.  Accordingly, Mathis has abandoned these claims.  See Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1114 n.1 (11th Cir. 1993) (declining to address appellants' Title VII retaliation claim because they failed to address it in their appellate brief).

returned for insufficient funds; (2) she was put on probation for failing to run a money order through the check scanner, thereby costing Wachovia $76,000 because the money order was fraudulent, but Piper was not disciplined for her role in cashing the money order; (3) she was put on probation for processing a $1,800 check without applying the hold that was prompted by Wachovia's computer system, thereby costing Wachovia $1,700 when the check was returned due to a "stop payment order"; (4) she was put on probation for not changing her hot pink hair within the ordered time frame, but Nicole Grzelka, a white employee, was not put on probation for dressing inappropriately, and Cassandra Goetz, a white employee, was not put on probation for ignoring requests to alter her appearance; and (5) she was reprimanded by her superior for arriving five minutes late to work because of traffic delays, but her superior routinely arrived late and allowed white employees to arrive late without reprimand.

The evidence presented during discovery established the following. While Mathis was working as a teller supervisor at Wachovia, an FSR position became available. To be eligible for the position, applicants were required to score at least an overall "C" grade on the qualifying exam. Mathis took the exam and scored an overall "D" grade on the exam. She was not hired for the position. Instead, Griffin, who had been working as a teller and "roving FSR," a position that

3

required traveling to other branches and assisting their FSRs, was given the position, even though he had not taken the qualifying exam.

In August 2003, the FCM at Mathis's Wachovia branch left the position. Wachovia posted information about the open position on its web site almost immediately. According to the post, the position required "[s]trong sales orientation; excellent communication skills; previous retail bank experience with emphasis in consumer and commercial banking; [and] previous loan production and business development experience." Piper's resume indicated that she had a combined five years' experience as the General Sales Manager at two manufactured homes companies and two years' experience as a Financial Specialist with Wachovia. Mathis's application for the FCM position failed to reference any sales management experience. According to Wachovia's Teller Operations Manual ("TOM"), as a teller supervisor Mathis was required to promote the bank branch's sales by making service and product recommendations to clients. Mathis was rejected for the position the same month that it came open, and Piper was hired.

Also while Mathis was working as a teller supervisor, a BOM position became available. Rather than post information on the opening on its web site,

4

however, a Wachovia superior approached McCormick and offered him the promotion. McCormick accepted.

Pursuant to Wachovia's TOM, a teller was subject to probation if he had a gross "cash outage" of more than $1,000 for the year, was "out of [balance]" more than 70 times for the year, had cashed "out of policy" checks totaling more than $1,000 for the year, and had cashed more than 5 out of balance checks for the year. On one occasion, Mathis cashed a $3,000 check without getting the appropriate approval. The check was returned for insufficient funds. Mathis was charged with an out-of-policy check violation and put on probation. Griffin deposited $1,100 and $1,600 credit card checks without applying the appropriate holds. While these credit card checks were returned for insufficient funds, the incident was charged to "fraud," rather than to Griffin as an out-of-policy check violation. Thus, Griffin was not put on probation.

On another occasion, a customer came into the branch with a $76,000 money order. Piper, recently hired as the FCM, dealt with the customer, but asked Mathis for assistance. According to Mathis, when she asked if a hold should be put on the money order, Piper said no and indicated that she knew that the customer had sufficient funds. Not wishing to be subordinate to her superior, Mathis wired the funds to the appropriate destination. Piper signed the appropriate paper work for

5

the transaction. When the money order turned out to be fraudulent, Mathis was put on probation. Piper was not disciplined for her involvement because she had been working at Wachovia only "a very few days" and had not been trained in Wachovia's teller procedures yet.

On another occasion, Mathis arrived at work with "hot pink hair." Per Wachovia's dress code, employees were to avoid "extremes in . . . hairstyles." Accordingly, Mathis was asked to change her hair color on March 31. Mathis was told that if she did not comply with the request by April 1, she would be placed on probation and that if she did not comply with the request by April 4 she would be terminated. Mathis returned to work the next day with the same hot pink hair and was put on probation. When Mathis returned to work the following day without hot pink hair, however, her probationary status was lifted. Grzelka, who wore extremely heavy makeup and very tight clothing was asked to "kind of tone down her makeup." Wachovia asserted that she returned to work the next day with less makeup on. Mathis, however, disputed this.

We review the district court's order granting summary judgment de novo. Damon v. Fleming Supermarkets of Fla., Inc., 196 F.3d 1354, 1357 (11th Cir.1999). Summary judgment is appropriate only "where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of

6

law." Id. at 1358 (citing Fed.R.Civ.P. 56(c)). In determining whether summary judgment is appropriate in a given case, we review the record and draw all reasonable inferences in the light most favorable to the non-moving party. Damon, 196 F.3d at 1358.

Title VII[2] prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). A plaintiff can establish a violation of Title VII on a disparate treatment theory through either direct or circumstantial evidence of discrimination. See Damon, 196 F.3d at 1358. We have defined direct evidence of discrimination as "evidence which reflects a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee" and have held that "only the most blatant remarks, whose intent could be nothing other than to discriminate" satisfy this definition. Id. at 1358-59 (internal quotations omitted). We use the burden-shifting framework established in McDonnell

---

[2] Along with her Title VII claim, Mathis also argued that Wachovia's allegedly discriminatory conduct violated § 1981 and Chapter 760 of the Florida Statutes. Allegations of violations of these provisions are analyzed under the same framework as Title VII claims. See Stallworth v. Shuler, 777 F.2d 1431, 1433 (11th Cir. 1985) ("Where, as here, a plaintiff predicates liability under Title VII on disparate treatment and also claims liability under sections 1981 and 1983, the legal elements of the claims are identical"); Harper v. Blockbuster Entm't Corp., 139 F.3d 1385, 1387 (11th Cir. 1998) (suggesting that a claim under Chapter 760 of the Florida statutes is analyzed under the same standards as a claim under Title VII).

Douglas to analyze claims based on circumstantial evidence. See McDonnell

Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668

(1973).

Under the McDonnell Douglas framework, the plaintiff has the initial burden

of establishing a prima facie case of discrimination. Id. To establish a prima facie

case of discrimination on failure-to-promote grounds, the plaintiff must show that:

(1) she is a member of a protected class; (2) she was qualified for and applied for

the promotion; (3) she was rejected despite these qualifications; and (4) other

equally or less qualified employees who were not members of the protected class

were promoted. Wu v. Thomas, 847 F.2d 1480, 1483 (11th Cir. 1988). In Jones

v. Firestone Tire and Rubber Co., Inc., 977 F.2d 527, 533 (11th Cir. 1992), we held

that when an employer does not advertise a job opening or uses informal means for

hiring, a plaintiff cannot be required to show that she applied for the job in

question to satisfy her burden of establishing a prima facie case. We cautioned,

however, that the plaintiff still must show that she was qualified for the job in

question. Id.

To establish a prima facie case of discriminatory discipline, the plaintiff

must show that: (1) she is a member of a protected class; (2) she was subjected to

an adverse employment action; (3) her employer treated similarly situated

8

employees outside of her protected class more favorably than she was treated; and (4) she was qualified to do the job. Burke-Fowler v. Orange County, Fla., 447 F.3d 1319, 1323 (11th Cir. 2006). Regarding the third element, that the plaintiff's employer treated similarly situated employees outside of the plaintiff's protected class more favorably than the plaintiff was treated, we have held that "the plaintiff must show that he and the employees [outside of the protected class] are similarly situated in all relevant respects." Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997). We have explained that we require "the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." Maniccia v. Brown, 171 F.3d 1364, 1368-69 (11th Cir. 1999).

If the plaintiff successfully establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the complained-of action. McDonnell Douglas Corp., 411 U.S. at 802-803, 93 S.Ct. at 1824. If the defendant meets this burden, then the burden shifts back to the plaintiff to show that the articulated reason was a pretext for discrimination. Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 255-56, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981).

9

Here, the record demonstrates that Mathis failed to establish a prima facie case of discrimination on failure-to-promote or discriminatory-discipline grounds. See McDonnell Douglas Corp., 411 U.S. at 802, 93 S.Ct. at 1824. Concerning the FSR and FCM positions, it is not disputed that Mathis belonged to a protected class or that she was rejected for these positions. See Wu, 847 F.2d at 1483. However, Mathis has not shown that she was qualified for the FSR position or that she was equally qualified or more qualified than Piper for the FCM position. See id. As to the FSR position, the evidence shows that Mathis received a "D" grade on the qualifying exam, when a "C" or greater grade was needed. While Mathis has argued that Griffin should have been required to take the qualifying exam, Griffin's own qualifications, or lack thereof, for the job do not alter the fact that Mathis was unqualified for the position and thus could not establish a prima facie case of discrimination as to this position. See id.

As to the FCM position, the evidence shows that Piper was more qualified for the position, which required a "strong sales orientation," because her resume indicated that she had five years of experience as a general sales manager, while Mathis's application said nothing of sales management experience. The only evidence that Mathis had any sales experience was the description in the TOM of a teller's responsibility to make product recommendations to customers. Moreover,

10

Mathis's argument that she was more qualified for the position than Piper because she "helped run" the bank branch while Wachovia was looking for a new FCM is without merit, as the evidence shows that Mathis filed her FCM application and was rejected for the position in the same month that the then-FCM left, such that there was very little or no time for Mathis to "help run" the branch in the FCM's absence. Thus, Mathis did not establish a prima facie case of discrimination as to this position. See id.

Concerning the BOM position, while it was not detrimental to Mathis's case that she could not show that she applied for the job, as it had not been advertised or offered to her, Mathis failed to offer any evidence that she was qualified for the job. Thus, Mathis failed to establish a prima facie case of discrimination on failure-to-promote grounds. See Wu, 847 F.2d at 1483.

Concerning the alleged incidents of discriminatory discipline, it is not disputed that Mathis belonged to a protected class, suffered an adverse employment action, or was qualified for her teller supervisor position. See Burke-Fowler, 447 F.3d at 1323. However, Mathis has not shown that an employee outside of her protected class who was similarly situated to her in all relevant aspects was treated more favorably than her. See Burke-Fowler, 447 F.3d at 1323; Holifield, 115 F.3d at 1562; Maniccia, 171 F.3d at 1368-69.

11

As to the $3,000-check incident, the evidence shows that Griffin's misconduct was not "nearly identical" to Mathis's, in that she failed to get the requisite approval for a check, while Griffin failed to apply the proper holds to two credit card checks. See Maniccia, 171 F.3d at 1368-69. The evidence also shows that Wachovia treated their misconduct differently, labeling Mathis's failure to get approval as an out of policy violation costing more than $1,000, and thereby meriting probation, but labeling Griffin's failure to apply the proper holds as "fraud," which was not a ground for probation in the TOM. Because their misconduct was not sufficiently similar, to judge Wachovia's different response to each instance of misconduct would be to risk "confusing apples with oranges" and second guessing Wachovia's decisions. See Maniccia, 171 F.3d at 1368-69. Moreover, Mathis and Griffin were not similarly situated in all relevant aspects because Mathis was a teller supervisor, while Griffin was a teller. See Holifield, 115 F.3d at 1562.

As to the $76,000-money-order incident, the evidence shows that Piper's experience was not similar to Mathis's in all relevant aspects because Piper had been working at Wachovia only a short time and had yet to be trained, while Mathis had been working at Wachovia as a teller supervisor for three years. See Holifield, 115 F.3d at 1562. Piper's familiarity with Wachovia's money-order

12

processing procedures was relevant to determining who was at fault in costing Wachovia $76,000. See Holifield, 115 F.3d at 1562. Because of this relevant difference in experience, Mathis and Piper were not similarly situated, and Mathis could not establish a prima facie case of discrimination as to this incident. See Burke-Fowler, 447 F.3d at 1323

As to the $1,800-check incident, Mathis failed to identify a comparator employee who had processed a check without applying the computer-prompted hold. Accordingly, there is no evidence that a similarly situated employee outside of Mathis's protected class was treated more favorably than her in this respect. See id.

As to the hair-color incident, the evidence shows that Grzelka did not hold a similar position, as she merely was a teller while Mathis was a teller supervisor. The difference in Grzelka's and Mathis's was relevant to Wachovia's handling of their allegedly inappropriate styles because Grzelka, unlike Mathis, was not in a position of authority at Wachovia. See Holifield, 115 F.3d at 1562. Because of this relevant difference in positions and duties, the two were not similarly situated in all relevant aspects, and Mathis could not establish a prima facie case of discrimination as to this incident. See Burke-Fowler, 447 F.3d at 1323. While Mathis argued before the district court that another employee, Goetz, also dressed

13

inappropriately without reprimand, she has not referred to this claim on appeal. Accordingly, she has abandoned the argument that she received disparate treatment compared to Goetz. See Fitzpatrick, 2 F.3d at 1114 n.1.

Finally, as to the incident described before the district court in which Mathis was reprimanded for being late, Mathis has not made reference to this argument on appeal. Accordingly, Mathis has abandoned her argument of discriminatory discipline in this matter. See id.

Because Mathis failed to establish a prima facie case of discrimination on any of the grounds alleged, she did not create a presumption of discrimination under the McDonnell Douglas framework, and the burden never shifted to Wachovia to rebut the presumption by demonstrating legitimate non-discriminatory reasons for its actions. See McDonnell Douglas Corp., 411 U.S. at 802-803, 93 S.Ct. at 1824. Thus, we affirm the district court's grant of summary judgment in favor of Wachovia on Mathis's complaint. See Damon, 196 F.3d at 1357; Stallworth, 777 F.2d at 1433; Harper, 139 F.3d at 1387.

**AFFIRMED.**