[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DEC 2, 2008
THOMAS K. KAHN
CLERK

_____

No. 08-11617
Non-Argument Calendar

_____

D. C. Docket No. 06-00413-CV-BE-S

SHARON D. GRAY,

Plaintiff-Appellant,

versus

VESTAVIA HILLS BOARD OF EDUCATION,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

**(December 2, 2008)**

Before ANDERSON, MARCUS and FAY, Circuit Judges.

PER CURIAM:

Sharon D. Gray appeals the district court's grant of summary judgment to Vestavia Hills Board of Education ("Board") in an action brought pursuant to 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2(a), 3(a), and the Family Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601. First, Gray argues that the court erred by granting summary judgment on her Title VII claims of disparate treatment based on gender and race after it adopted the magistrate judge's erroneous findings that: (1) Gray's expression of interest in other positions was not sufficient to qualify as an application for those positions; (2) Gray failed to rebut the Board's reason that it hired Willie Ezell for the head custodian position at Vestavia Hills High School ("high school") because he had the required floor-buffing skills that Gray lacked; (3) Gray failed to establish that she was paid less than similarly-situated white and/or male employees; (4) the Board's step pay system was a legitimate reason for failing to pay Gray what she deserved; and (5) Gray's shift change was not a tangible employment action. Second, Gray argues that the court erred by granting summary judgment on her Title VII retaliation claim because she established that she suffered adverse consequences because of her November 2004 conversation with the Alabama Education Association ("AEA") representative and the April 6, 2005, letter she wrote to Assistant Superintendent Karen DeLano protesting the

2

unfair pay she received. Third, Gray contends that the court erred by granting summary judgment on her § 1981 claims, brought pursuant to 42 U.S.C. § 1983, because she introduced evidence that the Board's decision not to promote and properly pay her was motivated by animus. Finally, Gray asserts that the court erred by granting summary judgment on her FMLA claim because there was no evidence as to how many hours she worked in the 12-month period preceding April 8, 2005, the date she requested FMLA leave to commence. The Board argues that most, if not all, of Gray's claims are time-barred. For the reasons set forth more fully below, we affirm.

## I. FACTS

On February 28, 2006, Gray, an African-American female, filed a counseled complaint against the Board alleging Title VII claims of: (1) disparate treatment based on race (Count I); (2) disparate treatment based on gender (Count II); and (3) retaliation (Count III). Gray alleged the following § 1981 claims brought by and through § 1983: (1) race discrimination (Count IV), and (2) retaliation (Count V). Gray also alleged that she was denied leave under the FMLA (Count VI).

In her complaint, Gray stated that she was a custodian and had been employed with the Board since August 9, 1977. She claimed that, in her 28-years of employment, she had been overlooked for several advancement opportunities,

3

denied transfers, and denied an opportunity to work part-time at the daycare. However, Gray alleged that other similarly-situated employees of a different race and gender were not denied those opportunities. Gray stated that, with respect to three vacancies she sought at the high school in January 2005, three males were hired. Further, Gray stated that the Board denied her request to change her shift from 6:30 a.m. - 3:00 p.m. to 6:00 a.m. to 2:30 p.m.,[1] even though it did not deny shift-change requests from other similarly-situated employees who were of a different race and who had less seniority. According to Gray, she complained on numerous occasions of disparate treatment based upon gender and race regarding unfair wages, and, in April 2005, Gray wrote a letter to her supervisor regarding her wages, which she claimed were lower than employees of less seniority and of a different race. Gray stated that Dr. DeLano informed Gray in an April 18, 2005, letter that no wage adjustment would be made. Gray wrote letters to Superintendent Dr. Jamie Blair on May 10, 2005, May 17, 2005, and September 12, 2005, requesting FMLA leave as a result of Gray's severe bilateral foot pain, which required surgery. All three of Gray's requests were denied.

After discovery, the Board filed a motion for summary judgment, a brief in support of its motion, and several supporting exhibits. In Gray's May 10, 2005,

---

[1] In her deposition, Gray stated that she requested the shift change when she returned to work in August 2005.

letter to the Board, she requested FMLA leave from April 8 to May 17 "due to her condition" that required her to be out of work since April 8, 2005. She attached two doctor's notes to the letter. In April 2005, Gray wrote a letter to Dr. DeLano stating that she had been paid "incorrectly" for some time and asking Dr. DeLano for assistance. According to Gray, she had 27 years of experience and was being paid on Step 12, but Gray stated that she should have been "maxed out" at Step 20 and should have been there for at least the past five years. In her deposition, Gray stated that, in November 2004, she spoke to an AEA representative about "political stuff" in Shelby County. Afterwards, Vestavia Central Principal Marian Humphries approached Gray and told her that other teachers had overheard Gray and the AEA representative talking about how things would never change at the school. Gray explained to Humphries that she was not talking about the school.

In Dr. DeLano's affidavit, she stated that the Board's salary schedule applied to all employees and had many steps, which did not necessarily correspond to the employee's number of years of service. Gray was one of the employees who had reached the maximum step until the Board added additional steps in the 2002-2003 school year. At that point, all of the custodians who had reached the maximum step level were eligible for additional step increases up to 20. Gray ended up at Step 17 as of the time of her Equal Employment Opportunity Commission

5

("EEOC") complaint, and Dr. DeLano specified that "there were no other custodial employees on any step higher than seventeen (17) at that same time and all custodians regardless of race or gender were treated in an equivalent manner as to salary step increases." Dr. DeLano stated that she discussed her willingness to put a letter from Gray about Gray's willingness to accept other custodial positions into the custodial application file, but the application process involved more than merely including a general letter of interest, and Dr. DeLano noted that jobs were posted in accordance with state law. According to Dr. DeLano, the high school position for which Ezell was hired involved primary duty floor care, and that Ezell had significant experience operating floor machines and maintaining floors in the school context. Further, Dr. DeLano stated that, in 2005, Gray was not assigned appreciably more area than any other custodian.

With respect to Gray's request for FMLA leave, Dr. DeLano stated that Gray worked fewer than 1,250 hours between the date of her request and the 12-month period preceding that request. In a footnote, Dr. DeLano stated that the payroll records revealed that Gray worked no more than 1,235 hours from April 7, 2004 to April 7, 2005.

Gray responded to the government's motion. Among other things, she claimed that she received less pay than white males with less experience, including

6

Jeremy Renfroe. Gray attached the affidavit of Brenda W. Jones to her response. In her affidavit, Jones stated that she taught fourth grade at Vestavia Hills Central from 1989 to 2001. Jones claimed that Renfroe was paid more than Gray, even though he began working for the Board after Gray and did the same kind of work that Gray did.

In his report and recommendation ("R&R"), the magistrate recommended granting the government's motion for summary judgment. The district court adopted the R&R over Gray's objections and granted the government's motion for summary judgment.

## II. Law & Analysis

"We review the district court's grant of summary judgment de novo, applying the same legal standards as the district court." Sierra Club, Inc. v. Leavitt, 488 F.3d 904, 911 (11th Cir. 2007). "Summary judgment is proper if, when viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Id. (citing Fed.R.Civ.P. 56(c)). In the context of summary judgment, we look at the record as a whole, reviewing all of the evidence in the record. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S.Ct. 2097, 2110, 147 L.Ed.2d 105 (2000). "There is a genuine issue of material

7

fact if the nonmoving party has produced evidence such that a reasonable factfinder could return a verdict in its favor." Waddell v. Valley Forge Dental Assocs., Inc., 276 F.3d 1275, 1279 (11th Cir. 2001).

"In cases where direct evidence of employment discrimination is lacking, we analyze the claim under the McDonnell Douglas[ Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973),] framework, which requires the plaintiff to create an inference of discrimination through her prima facie case."[2] Springer v. Convergys Customer Mgmt. Group Inc., 509 F.3d 1344, 1347 (11th Cir. 2007). If the plaintiff makes out the elements of a prima facie case of discrimination, the burden shifts to the employer to articulate a non-discriminatory basis for its employment action. Id. Once the employer meets this burden, the plaintiff must show that the proffered reasons were pretextual. Id. "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Id.

**A. Gray's Title VII Disparate Treatment Claims**

**i.     Whether most of Gray's claims are time-barred under Title VII**

Before a plaintiff may pursue a Title VII discrimination claim, she first must

---

[2] "Although McDonnell Douglas was a Title VII case, Title VII and section 1983 claims have the same elements where the claims are based on the same set of facts." Rioux v. City of Atlanta, Georgia, 520 F.3d 1269, 1275 n.5 (11th Cir. 2008).

exhaust her administrative remedies. Wilkerson v. Grinnell Corp., 270 F.3d 1314, 1317 (11th Cir. 2001). To exhaust her remedies, the plaintiff must file a timely charge of discrimination with the EEOC. Id. (citing 42 U.S.C. § 2000e-5(b)). To be timely within a non-deferral state, such as Alabama, it must be filed within 180 days of the last discriminatory act. 42 U.S.C. § 2000e-5(e)(1); see also Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 109, 122 S.Ct. 2061, 2070, 153 L.Ed.2d 106 (2002) (stating that "[i]n a State that has an entity with the authority to grant or seek relief with respect to the alleged unlawful practice, an employee who initially files a grievance with that agency must file the charge with the EEOC within 300 days of the employment practice; in all other States, the charge must be filed within 180 days"); see also Ledbetter v. Goodyear Tire and Rubber Co., Inc., 421 F.3d 1169, 1178 (11th Cir. 2005), aff'd, 127 S.Ct. 2162 (2007) (noting that Alabama is a non-deferral state).

Gray filed her EEOC complaint on April 13, 2005. Thus, to be timely, the acts of which Gray complains must have occurred on or after October 15, 2004. See 42 U.S.C. § 2000e-5(e)(1); Morgan, 536 U.S. at 109, 122 S.Ct. at 2070. Accordingly, the district court did not err when it adopted the magistrate's finding that the claims involving acts before then were time-barred. However, because the record reflects that Gray's shift changed when she returned to work in September

9

2005, and she claimed that she was denied a shift change request in August 2005, the magistrate erred when it found that Gray's last shift change fell outside the 180-day period. As a result, Gray's Title VII claims relating to the following acts are timely: (1) the Board's January 2005 selection for the high school positions; (2) the retaliation of Gray's alleged protest of discriminatory treatment after her November 2004 conversation with the AEA representative; (3) the acts relating to Gray's April 2005 letter concerning her wages; and (4) the denial of Gray's shift change request.

## ii.     Failure to Promote

To establish a <u>prima facie</u> case of discrimination on failure-to-promote grounds, Gray must show that: (1) she is a member of a protected class; (2) she was qualified for and applied for the promotion; (3) she was rejected despite these qualifications; and (4) other equally or less qualified employees who were not members of the protected class were promoted. <u>Wu v. Thomas</u>, 847 F.2d 1480, 1483 (11th Cir. 1988); <u>but see</u> <u>Walker v. Mortham</u>, 158 F.3d 1177, 1185-93 (11th Cir. 1998) (holding that the qualifications of others is not relevant to the <u>prima facie</u> case). To satisfy her burden, Gray cannot be required to show that she applied for the job in question when the employer does not advertise the job opening or uses informal means for hiring. <u>Jones v. Firestone Tire and Rubber</u>

Co., Inc., 977 F.2d 527, 533 (11th Cir. 1992). In that case, the plaintiff still must show that she was qualified for the job in question. Id.

The record indicates that the Board posted open positions in accordance with state law.[3] Gray does not assert, nor is there any evidence that the Board failed to post the head custodian position to which Ezell was selected. Moreover, unlike Gray's assertions otherwise, the Board's application process involved more than merely including a letter of general interest in the custodial application file. Gray was aware of the posting process and had used it to apply for positions in the past. Thus, even though she had a conversation with Dr. DeLano about her interest in other positions, Gray has not shown that she actually applied for the head custodial position at the high school. As such, the district court did not err by granting the Board's motion for summary judgment on this claim because Gray failed to establish a prima facie case of failure to promote.[4] See Wu, 847 F.2d at 1483.

_____

[3] Although in her complaint, Gray alleges that she was discriminated against on the basis of her gender and race with respect to three high school positions, she acknowledged in her deposition that she was not discriminated against on the basis of race because the three selected individuals were also African American. Moreover, Gray claimed gender discrimination only with respect to the head custodian position to which Ezell was selected. Thus, the other two positions she mentions in her complaint are not discussed.

[4] Even if she had established a prima facie claim of failure to promote, we would still affirm because Gray has failed to rebut the Board's proffered reason for selecting Ezell for the position. Specifically, the record reflects that Ezell was selected because, inter alia, he had the requisite experience buffing floors. Even though the magistrate found that Gray was "at least minimally qualified" for the position, the head custodian position required that the selected employee have floor-buffing experience, and Gray admitted that she had none. As such, Gray has not met her burden of showing that the proffered reason for the Board's decision to select

11

### iii:    Disparate Pay

To establish a prima facie case of disparate pay, Gray must show that she occupies a job similar to that of higher paid persons who are not members of her protected class. Meeks v. Computer Assocs. Int'l, 15 F.3d 1013, 1019 (11th Cir. 1994). Gray has failed to make a prima facie case because the record reflects that "there were no other custodial employees on any step higher than [Gray's step] at that same time." See id. Moreover, Dr. DeLano stated that "all custodians regardless of race or gender were treated in an equivalent manner as to salary." Gray acknowledged that the other similarly-situated white employees with less seniority were not paid more than she. Further, although she later complained that another white male named Renfroe was paid more than she, the only evidence Gray presented to support her claim was Jones's affidavit in which Jones stated that she had taught fourth grade at Vestavia Hills until 2001, several years before Gray filed her April 2005 EEOC complaint. Thus, Gray has not shown that the magistrate erred by finding that Gray had failed to establish a prima facie claim of disparate pay.[5]

_____

Ezell was pretextual. See Springer, 509 F.3d at 1347.

[5] Gray also has failed to rebut the Board's proffered reason for the pay structure or its application. Specifically, Dr. DeLano discussed how, prior to the 2002-2003 school year, Gray and others had "capped out" at the highest step, Step 14. When the pay structure changed, more steps were added, but none of the "capped out" employees were "adjusted" to account for additional years of service, and each of the employees who had capped out were then eligible to

iv.     **Shift Change**

We have held that:

to prove adverse employment action in a case under Title VII's anti-discrimination clause, an employee must show a serious and material change in the terms, conditions, or privileges of employment. Moreover, the employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances.

Davis v. Town of Lake Park, Fla., 245 F.3d 1232, 1239-40 (11th Cir. 2001).  Thus, "[a]lthough the statute does not require proof of direct economic consequences in all cases, the asserted impact cannot be speculative and must at least have a tangible adverse effect on the plaintiff's employment."  Id. at 1239.

Gray filed her EEOC complaint in April 2005, and she claims that she was denied the shift change request in August 2005.  Thus, as an initial matter, even though the parties do not raise it, it is questionable whether Gray properly exhausted this issue.  See Wilkerson, 270 F.3d at 1317.  Nonetheless, even if this issue were properly exhausted, the denial of Gray's request for a shift change from 6:30 a.m. - 3:00 p.m. to 6:00 a.m. - 2:30 p.m. does not amount to a "serious and

---

progress up to Step 20.  Gray ended up at Step 17 at the time she filed her EEOC complaint, and there were no other custodians who were paid at a higher step.  As such, Gray has not met her burden of showing that the proffered reason for the Board's pay structure or application thereof was pretextual.  See Springer, 509 F.3d at 1347.

13

material change in the terms, conditions, or privileges of employment." See Davis, 245 F.3d at 1239-40. Although Gray asserts that she suffered "direct economic harm" because the denial of her request affected her other job, which she had to keep in order to make ends meet, the record reflects that, in September 2005, when she returned to school, Gray was not working at the second job at that time. Thus, she has not shown that the change was materially adverse to her as viewed by a reasonable person in the circumstances. See Davis, 245 F.3d at 1239-40.

## B. Gray's Title VII Retaliation Claim

Title VII makes it unlawful for an employer to discriminate against an employee in retaliation for opposing a practice made an unlawful employment practice under Title VII. 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation under Title VII, "a plaintiff must show that (1) she engaged in statutorily protected expression; (2) she suffered an adverse employment action; and (3) there is a causal connection between the two events." Johnson v. Booker T. Washington Broad. Serv., Inc., 234 F.3d 501, 507 (11th Cir. 2000) (quotations omitted).

Gray can establish that she engaged in statutorily protected activity under Title VII 's opposition clause only if "[s]he shows that [s]he had a good faith, reasonable belief that the employer was engaged in unlawful employment

14

practices." Little v. United Tech., Carrier Transicold Div., 103 F.3d 956, 960 (11th Cir. 1997). Gray must show not only that she subjectively believed she was being discriminated against, but also "that [her] belief was objectively reasonable in light of the facts and record presented." Id. (emphasis in original).

As previously discussed, once a prima facie case is established, the burden shifts to the defendant to rebut the presumption of retaliation by producing legitimate reasons for the adverse employment action. Springer, 509 F.3d at 1347. If the defendant offers legitimate reasons, the presumption of retaliation disappears. See id. The plaintiff must then show that the employer's proffered reasons for taking the adverse action were actually a pretext for prohibited retaliatory conduct. See id.

In this case, Gray has failed to establish a prima facie case of retaliation with respect to either of the activities she complains because, inter alia, she cannot show that she engaged in statutorily protected activity with respect to the activities surrounding either the November 2004 conversation or the April 2005 letter about her pay. See Johnson, 234 F.3d at 507. As such, she cannot show that the Board retaliated against her on that basis. Accordingly, the district court did not err by granting the Board's motion for summary judgment on this claim.[6]

---

[6] It is worth noting that, with respect to her claim of retaliation based on her "protest" regarding her pay, (1) there is no evidence that Gray was being paid less than other similarly-

15

## C. Gray's §§ 1981 and 1983 Claims

"Section 1981 protects people, and some entities, from racial discrimination during the making of contracts." Webster v. Fulton County, Georgia, 283 F.3d 1254, 1256 (11th Cir. 2002). "Section 1981 is enforceable against a municipality through 42 U.S.C. § 1983." Id.; see also Butts v. County of Volusia, 222 F.3d 891, 894 (11th Cir. 2000) (concluding that Section 1983 is exclusive remedy for enforcement of section 1981 rights against state actors). As previously mentioned, "[a]lthough McDonnell Douglas was a Title VII case, Title VII and section 1983 claims have the same elements where the claims are based on the same set of facts." Rioux, 520 F.3d at 1275 n.5.

The district court did not err by granting the Board's motion for summary judgment on Gray's § 1983 claims because, discussed supra, Gray failed either to: (1) establish prima facie cases for her Title VII claims; or (2) demonstrate pretext as to the Board's proffered legitimate, nondiscriminatory reasons for her failure to promote and disparate pay claims. See Springer, 509 F.3d at 1347. As such, the Board was entitled to summary judgment on this issue. See Fed.R.Civ.P. 56(c);

---

situated employees, and (2) Gray failed to rebut the Board's proffered legitimate reasons for its pay structure and application. See Springer, 509 F.3d at 1347. In addition, other than the conclusory statements in her brief, Gray has not identified any evidence in the record to support her claim of discriminatory retaliation after she allegedly confronted Humphries about the "unfair and inequitable conditions of her job."

Rioux, 520 F.3d at 1275 n.5.

### D. Gray's FMLA Claim

"The FMLA entitles an <u>eligible</u> employee to take up to 12 weeks of leave in a 12-month period for the birth or adoption of a child, or the serious health condition of the employee or the employee's child, spouse, or parent." <u>Morrison v. Amway Corp.</u>, 323 F.3d 920, 922-23 (11th Cir. 2003) (citing 29 U.S.C. § 2612(a)(1)) (emphasis added). An "eligible employee" is one who has been employed for at least 12 months by the employer and for at least 1,250 hours of service with the employer during the previous 12-month period. 29 U.S.C. § 2611(2)(A)(i)-(ii).

The district court did not err in granting summary judgment on Gray's FMLA claim. The court adopted the magistrate's finding that Gray was not eligible for leave under the FMLA because she had not worked 1,250 hours in the preceding 12-month period. The magistrate did not specify upon which date he based his conclusion. However, in Dr. DeLano's affidavit, she indicated that Gray worked 1,235 hours from April 7, 2004, to April 7, 2005. In her response to the Board's motion for summary judgment, Gray did not dispute that fact, nor does she dispute it on appeal. Thus, contrary to Gray's assertions otherwise, Gray was not eligible for leave under the FMLA because she had worked fewer than 1,250 hours

in the 12-month period preceding April 8, 2005.[7]  <u>See</u> 29 U.S.C. § 2611(2)(A)(i)-

(ii); <u>Morrison</u>, 323 F.3d at 922-23.

**AFFIRMED**.

---

[7] Further, by failing to raise them on appeal, Gray has abandoned her arguments with respect to (1) the denial of her September 2005 request for leave, and (2) her claim that the Board erroneously denied her May 2005 leave request because it believed that the FMLA could not be granted retroactively.  <u>See</u> <u>Access Now, Inc. v. Southwest Airlines, Co.</u>, 385 F.3d 1324, 1330 (11th Cir. 2004) (noting that a legal claim or argument that has not been briefed will be deemed abandoned).